See dissenting opinion of PROVOSTY, J., 71 South. 729.

---

(71 South. 730)

No. 21861.

STATE v. McGARRITY.

(April 24, 1916. On Application for Rehearing, May 13, 1916.)

*(Syllabus by the Court.)*

1. JUDGES ⬾16(2)—RECUSATION—APPOINTMENT OF SUBSTITUTE.

Where the trial judge in a criminal case recuses himself by reason of having been employed and consulted prior to his accession to the bench on behalf of the prosecution, the question whether a lawyer or a judge of an adjoining district is to be appointed to act in his stead is to be determined in accordance with the provisions of section 2 of Act No. 40 of 1880, which requires the appointment of a lawyer having the qualifications of a judge of the court in which the prosecution is pending, and "if no lawyer having the necessary qualifications can be obtained at the term of court at which the recusation is declared," then the appointment of a judge of an adjoining district.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 56–59; Dec. Dig. ⬾16(2).]

2. JUDGES ⬾16(1)—RECUSATION—APPOINTMENT OF SUBSTITUTE.

When a motion to recuse the presiding judge in a criminal case is made under section 2 of Act No. 40 of 1880 during the morning hour of the court, and is taken under advisement until after the noon recess, and an order of recusation is then handed down declaring the recusation, reciting that no lawyer having the necessary qualifications could be found to act instead of the recused judge, and appointing a judge of an adjoining district to discharge that function, and defendant, through counsel, objects to such appointment, and asserts that legally qualified lawyers could be found who would be willing to act, an issue of fact is presented upon which the defendant is entitled to be heard, and it is

reversible error for the recused judge to insist upon the appointment as thus made until that issue is inquired into and determined. ·

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 46, 53–56; Dec. Dig. ☞16(1).]

3. JUDGES ☞16(2) — SUBSTITUTE JUDGE — OATH.

The judge of an "adjoining district," appointed to sit in a recused case, is not required to take any special or additional oath of office, since sitting in such cases is part of the duty that he is already sworn to discharge.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 56–59; Dec. Dig. ☞16(2).]

4. HOMICIDE ☞158(1)—EVIDENCE—ADMISSIBILITY.

The charge of manslaughter negatives the idea of premeditation or malice, and in a case in which there were several eyewitnesses to the homicide evidence of previous threats on the part of the accused is inadmissible, whether offered to prove the intent to provoke a difficulty or to show who was the aggressor.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 293; Dec. Dig. ☞158(1).]

Appeal from Third Judicial District Court, Parish of Bienville; J. B. Holstead, Judge.

S. C. McGarrity was convicted of manslaughter, and appeals. Conviction and sentence annulled, and case remanded.

Stubbs & Theus, of Monroe, and Wimberly & Dormon and J. T. Reeves, all of Shreveport, for appellant. R. G. Pleasant, Atty. Gen., T. T. Land, Dist. Atty., of Homer (G. A. Gondran, of New Orleans, H. B. Warren, of Ruston, R. L. Williams, of Arcadia, and William C. Barnette, of Shreveport, of counsel), for the State.

MONROE, C. J. Defendant having been charged with manslaughter, his counsel moved that the presiding judge of the trial court be recused, on the ground that prior to his (then) recent appointment to the bench he had been employed and consulted in the cause on behalf of the state and, further, moved that a lawyer having the necessary qualifications be appointed in his stead, or, if no such lawyer could be found at or during the then term of the court, that the judge of an adjoining parish be appointed to try the case. Some hours later, on the same day, the judge entered an order containing the recitals that he had been employed as counsel as alleged in the motion, that he sustained the motion to the extent of recusing himself, and that, "having requested and solicited each lawyer in the district having the qualifications of a judge of the third judicial district court * * * to act as special judge and try said case, and after each of said lawyers had refused to try said case, or act as special judge, * * * and, it being impossible to secure a lawyer having the necessary qualifications to act as special judge, * * * *" he appointed Hon. J. B. Holstead, judge of an adjoining district, to act in that capacity.

Counsel for defendant objected to the action so taken, and took a bill of exception thereto, which reads in part as follows:

"No action was taken on the motion to recuse, and the court took a recess until 2 o'clock p. m. of same day, and at said hour, * * * without hearing defendant and without giving him an opportunity of showing that a lawyer possessing the necessary qualifications of a judge of this court resided within the district who was competent to try the cause, and that, as a matter of fact, at least five lawyers possessing the qualifications of a judge of this court do reside within the district, and, over the objection of defendant and his counsel, the Honorable J. E. Reynolds, presiding judge, * * * filed an order of recusation, and appointed Hon. J. B. Holstead, judge of the Fourth judicial district, to try the same, and the said Judge Holstead, being present in court, took his seat as special judge to try this cause; to which ruling of the judge of this court and the act of Judge Holstead in assuming jurisdiction the defendant then and there excepted and reserved this bill of exception. * * *"

The statement per curiam attached to the bill reads:

"When the motion was filed, the court stated * * * that the motion to recuse would be sustained, and asked if there was any objection to the court passing on the application and recusing himself. Attorney for defendant, J. C. Theus, stated he thought not, if the court was ready to sustain the motion. The judge of the court having personally applied to every lawyer in the district having the qualifications of a judge to try this case, and each of said lawyers having refused to act as judge in this case, called Judge J. B. Holstead, of the Fourth judicial district court, to try this case."

The causes for which a judge "shall be recused" are specified in section 1 of Act No. 40 of 1880, and are: (1) His being interested in the cause; (2) being related to one of the parties within the fourth degree; (3) having been employed or consulted as advocate in the cause; (4) being father-in-law, son-in-law, or brother-in-law of one of the parties; (5) having rendered judgment in the cause in any other court. The next section deals with the question of the selection of the judge who is to act in the place of him who is recused, and reads:

"Sec. 2. * * * That, in cases in which a district judge shall be recused, except for cause of interest, he shall, for the trial thereof, appoint a lawyer having the qualifications of a judge of the district court in which the recused case is pending, and if no lawyer having the necessary qualifications can be obtained at the term of court at which the recusation is declared, the judge (recused) shall immediately appoint some district judge of an adjoining district to try the case, who shall be notified of his appointment in the manner provided in section 3 of this act."

[1] Acts Nos. 40 of 1880, 35 of 1882, 74 of 1884 and 185 of 1898 are referred to in the brief filed on behalf of the state, but only Acts Nos. 40 of 1880 and 74 of 1884 are said to have any bearing on this case. The act of 1880, as we have seen, is strictly applicable. The act of 1884 is entitled "An act to provide for the interchange of district judges throughout the state," and it provides:

"Section 1. * * * That in addition to the provisions of law now existing for the trial of recused cases in the several district courts of this state, the district judges of [the] same parish or district, or of adjoining districts, may interchange for the trial and disposition of all such recused cases.
"Sec. 2. * * * That it shall be the duty of the district judges above mentioned to proceed to the court, at any legal term, when recused cases are pending, when required and notified as now provided, and to try and determine or make legal disposition of [the] same."
"Sec. 3. The district judges, when so interchanged, shall exercise all the powers necessary for the full and final determination of said recused cases."

There is no repealing clause, and, considering that the act purports to add to, and not to subtract from, the existing legislation upon the subject of the trial of recused cases, and in the matter of the interchange of judges is merely permissive, and not obligatory, we find no ground upon which to base the conclusion that it was intended to supersede the mandatory provision of section 2 of Act No. 40, of 1880, which declares that in a case such as this the judge shall appoint a lawyer, if there is one with the proper qualifications to be found, "at the term of court at which the recusation is declared," and which in so doing, not only imposes an obligation on the judge, but confers upon the litigants before him the right to demand that the obligation be discharged, and, as a corollary thereto, the right to be heard in the assertion of their demand.

[2] In a very large proportion of the cases, and particularly criminal cases, which are brought to this court, where the statements of the judge and the litigant, or his counsel, conflict as to some alleged fact not otherwise presented or susceptible of presentation, that of the judge is accepted as controlling; but where, as in this case, the law confers upon a defendant in a criminal prosecution a certain right the enjoyment of which is made dependent upon the determination of a question of fact, and the defendant desires to be heard upon that question, the ruling of the judge, in deciding the question, whilst denying the hearing, is subject to review when properly brought before this court. The trial judge in this case states that he had applied to every qualified lawyer in the district to act in his place, and that all of them had refused to assume that responsibility. According to the bill of exception, defendant, through counsel, objected to the appointment of the judge ad hoc at the time that the order was entered, upon the ground, in effect, that the trial judge was mistaken, and that there were

qualified lawyers who had not been requested to act and who would be willing to do so, thus presenting an issue upon which the ex parte finding of the judge was not conclusive, but upon which defendant was entitled to be heard, and the determination of which without affording him that opportunity was a reversible error—a conclusion at which we arrive the more readily for the reason that the statute seems to contemplate an investigation extending beyond a few hours, since it provides for the appointment of the judge of an adjoining district "if no lawyer having the necessary qualifications can be obtained at the term of court at which the recusation is declared."

[3] It is argued that the judge who acted in the case was not qualified, because he failed to take an oath as special judge or judge ad hoc, but we are referred to no law requiring such additional oath, and, as it was as much a part of his duty, as judge of the Fourth judicial district court, to sit in a recused case in the Third judicial district, when legally appointed and notified, as to discharge any other duty of his office, an additional oath was unnecessary.

[4] The trial judge, over the objection of defendant, admitted the testimony of Dr. Mosely to the effect that about a month or six weeks prior to the homicide defendant had said to him:

"If old man Jim Howell ever attempts to arrest me and take me before Bob Williams, I am going to kill the —— —— —— ——. I am not going to put my head in a halter to do it, but I am going to get him." (Jim Howell, it will be understood, was the decedent, who was town marshal, and "Bob Williams" was the mayor.)

There was reversible error in the ruling. Defendant was prosecuted upon the charge that he "did then and there feloniously kill and slay J. S. Howell, contrary to the form of the statute," etc., being a charge of manslaughter, which is defined to be "the unlawful killing of another without malice aforethought, either express or implied"; the absence of malice and premeditation being characteristics which distinguish it from murder. 21 Cyc. 683, 734, 739.

"Voluntary manslaughter is the killing of another intentionally, but in a sudden heat of passion due to adequate provocation, and not with malice." Id. 736.

In State v. Lewis, 133 La. 1095, 63 South. 597, the defendant charged with manslaughter, sought to introduce evidence of prior amicable relations with the deceased, but it was held to have been properly excluded. The court said:

"The charge implies a killing in the heat of blood on sudden provocation. * * * Whether the homicide was willful or accidental was a question dependent on the action of the parties at the time of the killing. The prior relations of the parties, * * * were not involved in the issue before the jury. If, in such a case, the defendant can prove prior amicable relations, the prosecution can prove prior quarrels, threats, and difficulties."

The testimony of Dr. Mosely tended to prove malice and premeditation and to show that defendant had committed murder, a crime with which he was not charged. It was likely to have been highly prejudicial to him. In the bill that was reserved upon the point the trial judge says:

"This witness was sworn after the witness P. A. McGuire, and the statement of fact contained in the bill of exception to the reception of the threat made to P. A. McGuire is made a part of this bill of exception as completely as if reproduced and copied herein."

It appears, however, that after the judge had incorporated the statement of fact in the McGuire bill counsel for defendant, being dissatisfied with it, abandoned the bill, which was therefore not filed in the record, and hence was not copied in the transcript. It appears also that the state, upon discovering the absence from the transcript of the judge's statement, as constructively incorporated in the bill now under consideration, called for it by a writ of certiorari, by way of return to which the judge sent up what he conceived to be the McGuire bill, including the statement, as he recalled it, to which defendant's counsel has interposed various objections.

The original McGuire bill, with the statement in question, having been returned to defendant's counsel, with the understanding on the part of the judge that it would be filed, we think he was entitled to rely on its being filed, for the purposes of the Mosely bill. We are informed through counsel's pleadings or brief that the statement was made in the trial court that the McGuire bill had been abandoned and would not be filed. We express no opinion upon the question of the right of counsel to abandon and withhold from the record a bill which had been presented to, and signed by, the trial judge; in fact, the information that we have in regard to the particular incident here in question does not enable us to form an opinion concerning it; but we feel authorized, under the circumstances, to resort to the statement which the judge has sent up as containing his reasons for admitting the testimony of Dr. Mosely.

It appears that the homicide was committed in the immediate presence of several eye-witnesses. The judge says:

"There was a conflict of testimony as to whether the deceased had drawn his pistol when he was shot or not; some testifying that he had, and some that he had not. In a case of this kind the court believes that threats are admissible to show defendant's intent to provoke a difficulty; to show that he was the aggressor."

If defendant had been charged with murder, the ruling would, no doubt, have been correct, and possibly it might have been admissible if there had been no witnesses who were present and were able to state what occurred at the moment of the killing, as tending to show who was likely to have been the aggressor; but, as the case is presented, we conclude that the reasons assigned for the admission of the testimony are insufficient. There are some other rulings that are complained of, but the disposition that we make of the case renders it unnecessary that we should review them.

For the reasons thus assigned, it is ordered that the conviction and sentence herein appealed from be annulled, and that the case be remanded to the district court, to be further proceeded with according to law and to the views hereinabove expressed.

O'NIELL, J., dissents from the ruling that the testimony of Dr. Mosely, that the defendant had threatened to kill Jim Howell, was not admissible; but concurs in the decree. See 71 South. 732.

### On Application for Rehearing.

PER CURIAM. In the case of State v. Wooten, 136 La. 560, 67 South. 366, to which we are referred in the application for rehearing, it appears from the statement of the trial judge that the testimony as to prior threats which had been made by the accused (charged with manslaughter) was admitted, because, although there were eye-witnesses to the killing, their testimony was conflicting, and left in doubt the question, Who began the difficulty? In the instant case there was no conflict in the testimony upon that point. The judge states (from recollection) his finding upon the bill to the testimony of McGuire, as follows:

"The testimony had shown that defendant, in the town of Arcadia, shot and killed the deceased, who was town marshal; that defendant had had a cow in the pound pen; that defendant had sent some money to the marshal for the release of the cow, which was returned on the claim that it was not enough; that on learning this the defendant took a drink of whisky and put a pistol in his pocket, and, as one witness swore, said, 'I'll see the damn son of a ————.'

"The defendant then went to the place where the marshal made his headquarters during the daytime, and there accosted the marshal and said to him, 'Uncle Jimmie, I let my cow out of the pound pen; you can do whatever you want to with me;' and the deceased said, 'Yes, yes, Mack; I'll have take you before the mayor, let us go;' and the defendant said, 'By God, I'm not going now;' and the deceased said, 'Yes; you are,' and laid his hand on defendant's shoulder, or caught him by the coat sleeve, and defendant jerked loose and said, 'God damn it; I'm not going.' And then deceased struck defendant over the head two or three licks with a walking stick, the effect of which, some of the witnesses said, caused the defendant to stag-

ger backward, with his hands raised as if to ward off the blows. The blows caused some bruises, but no skin broken. The defendant backed off some 10 or 15 feet, then shot and killed the deceased—

"Here there was a conflict of testimony as to whether the deceased had drawn his pistol when he was shot or not, some testifying that he had, and some that he had not, the preponderance in weight being that he only attempted to draw his pistol when he saw that defendant was going to shoot him. The testimony as a whole produced on the court's mind the conclusion that the purpose of the marshal was solely to carry the defendant before the mayor, and that he made no effort to use his pistol until he saw that the intent of the defendant was to shoot. Taking all of the testimony in the case up to the time of the ruling, the proffered testimony was competent on the question of intent, and who provoked the difficulty; what was the purpose of the defendant in seeking the marshal and confessing the deed and voluntarily surrendering to stand trial. This appears to be a reasonable conclusion deduced from the words of the defendant.

"The stick used was exhibited to the jury. In a case of this kind the court believes that threats are admissible to show defendant's intent to provoke a difficulty; to show that he was the aggressor."

It will be seen, therefore, that there was no conflict in the testimony as to the manner in which the affray began, or as to its progress, until the last moment, when the fatal shot was fired; and, as we understand the record, there were at least three eyewitnesses to testify to the actual facts as they occurred at that time. We are therefore satisfied that there is no error in holding that testimony tending to show that defendant was acting from the beginning with the premeditated intention of killing the deceased was improperly admitted, since he was not prosecuted on that charge.