155 So. 896

## STATE v. ELMORE.

### No. 32811.

May 21, 1934.

George Wesley Smith and K. Ann Dodge, both of Monroe, for appellant.

G. L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and Frank W. Hawthorne, Dist. Atty., of Bastrop, and George W. Lester, Asst. Dist. Atty., of Monroe (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

ODOM, Justice.

The defendant was indicted for murder and convicted of manslaughter. On appeal the conviction was set aside and the case remanded for retrial (177 La. 877, 149 So. 507). At the second trial he was prosecuted for manslaughter, convicted and sentenced. From the second conviction and sentence he appealed.

There are only two questions presented for our consideration. The first is whether article 354 of the Code of Criminal Procedure is constitutional, and the second is whether testimony tending to show that defendant was guilty of murder was admissible at the second trial when he was on trial for manslaughter only, having been acquitted of murder on the first trial.

1. The trial judge ruled that the state was entitled to twelve peremptory challenges, the same number allowed defendant. This ruling was in conformity with article 354 of the Code of Criminal Procedure, which reads as follows:

"In all trials for any crime punishable with death, or necessarily with imprisonment at hard labor, the defendant shall be entitled to challenge peremptorily twelve (12) jurors, and the prosecution twelve (12). In all other criminal cases the defendant shall have six (6) peremptory challenges and the State six (6)."

This article of the Code makes a radical change in the criminal procedure of this state, in that it allows to the state and the defendant an equal number of peremptory challenges in all criminal cases tried by jury, whereas, under the prior statutes, the state had only half as many as the defendant. Act No. 135 of 1898; section 997, Revised Statutes of 1870, as amended by Act No. 36 of 1880.

Defendant's contention is that the above-quoted article of the Code is unconstitutional. It is conceded that, if that article of the Code, which has reference only to the number of peremptory challenges allowed each side in criminal prosecutions, is procedural law, the article is constitutional. But it is argued that the article is "substantive" and not "procedural" law, and is therefore unconstitutional under the ruling in State v. Rodosta, 173 La. 623, 138 So. 124, 128, where it was held that "the Legislature could not, by adopting the Code of Criminal Procedure, change the substantive law of the state because no such authority was conferred by the Constitution."

In the Rodosta Case we pointed out the difference between "substantive" and "procedural" law, and said that, "as relates to crimes, substantive law is that which declares what acts are crimes and prescribes the punishment for committing them. Procedural law is that which provides or regulates the

steps by which one who violates a criminal statute is punished."

Counsel for defendant say in their brief at page 12 that "it is true that a statute fixing the number of peremptory challenges is procedural in its nature." But they say further, and this is the ground on which they base their argument, that the article of the Code is unconstitutional: "We contend that a statute which fixes procedure is as much substantive law as one which defines a crime and fixes its punishment." In other words, the argument is that all statutes relating to crimes and offenses and all those regulating criminal procedure, in effect at the time the Code was adopted, are "substantive" laws by reason of their existence as laws, and that, under the holding in the Rodosta Case, the Legislature could not, by adopting the Code, change any of these laws.

■ Counsel are in error. "Law is a solemn expression of legislative will." Civ. Code, art. 1. A statute relating to criminal procedure is a law, but not substantive law. The term "law" includes "substantive law" and "adjective law" or the law of procedure. Substantive law, speaking broadly, is that which creates duties, rights, and obligations. 25 Cyc. 164, citing Black's Law Dictionary. "It orders and permits and forbids" and "announces rewards and punishments." Civ. Code, art. 2.

As relates to crimes and offenses, it declares "what acts are crimes and prescribes the punishment for committing them." State v. Rodosta, supra.

Adjective or procedural law is that which "provides a method of enforcing and protecting such duties, rights and obligations" as are created by substantive laws. 25 Cyc. 164, citing Black's Law Dictionary. As relates to criminal prosecutions, procedural law includes within its meaning whatever is embraced by the three technical terms "pleading," "evidence," and "practice." It relates to "those legal rules which direct the course of proceedings to bring parties into court and the course of the court after they are brought in." See "Procedure" in 6 Words and Phrases, First Series, 5631; Kring v. Missouri, 107 U. S. 221, 2 S. Ct. 443, 27 L. Ed. 506; Bishop's Criminal Procedure, § 2.

There are approximately three hundred sections of the Revised Statutes of 1870 which relate exclusively to criminal law and its administration in this state. Nearly two hundred of these sections are listed under the general heading "Crimes and Offenses," and have to do only with the general subject of what are crimes and the punishment therefor. These sections, together with kindred statutes adopted since 1870, are the substantive criminal laws of the state. Sections 976 to 1090, inclusive, are listed under the general heading "Criminal Proceedings," and relate exclusively to those statutory rules of procedure for bringing accused persons into court and "the course of the court after they are brought in." These sections of the Revised Statutes and similar statutes adopted since are what may properly be referred to as procedural laws, or laws of procedure. Section 997, which provides that in all criminal cases tried by jury the defendant shall have double the number of challenges allowed the state, is printed under this general heading and is procedural law.

By an amendment to the Constitution adopted November 2, 1926 (Act No. 262 of 1926), the Governor was authorized to appoint a commission "to prepare a draft of a Code of Criminal Procedure for this State." Section 1-a. The commission was appointed, a draft was made, submitted to the Legislature, and adopted with certain amendments. The Code was adopted as an act of the Legislature (Act No. 2 of 1928) which contains the following repealing clause: "Section 2. All laws or parts of laws contrary to or in conflict with the provisions of this Code are hereby repealed."

Upon the adoption of the Code, all statutory and other rules of criminal procedure theretofore existing, which were in conflict with its provisions, were set aside, and the Code itself became the procedural law of the state.

We cannot sanction the contention made by counsel for defendant that it was intended that the Code should be merely a compilation of the statutory rules of procedure then existing. The Legislature was not authorized by the constitutional amendment merely to revise, or make a codification or revision, of the laws of the state relative to criminal procedure. On the contrary, it was authorized to adopt a code of criminal procedure for the state. By conferring this general authority, it was intended that the Legislature should adopt a general, complete, and comprehensive system or body of laws in one act relative to criminal procedure in this state. It was not intended that the provisions of the Code should be drawn from any particular source, or conform to the rules of practice and pleading then existing. The Legislature was au-

thorized to adopt new and different rules and to discard old ones, to carry into the Code such of the old rules as it saw fit, and to repeal all laws not in conformity with the new regulations. General authority to adopt a code of laws for the state is quite different from authority to make a codification of existing laws. Authority to adopt a code is much broader in its scope and more comprehensive than authority to compile existing laws. Authority to adopt a code includes the power to enact a general system or body of laws, whereas authority to make a compilation of laws includes only the power to convert or bring together existing statutes, into a code. The Legislature was authorized to adopt a code, not merely to make a compilation of existing statutes. Article 354 of the Code relates to a matter which is purely procedural, and is constitutional.

2. Defendant was indicted for murder and, on first trial, was convicted of manslaughter, which had the effect of acquitting him of murder. That conviction was set aside on appeal and the case remanded. He was then put on trial for manslaughter and convicted. This appeal is from the second conviction and sentence.

At the second trial, the state was permitted, over the objection of counsel, to introduce testimony showing that defendant had entered into a conspiracy with two others to rob one Ted Riser, and that, while attempting to perpetrate the robbery, one of the conspirators shot and killed Riser, the defendant being then present. Robbery being a felony under the law of this state, it is conceded by counsel for the state that, under the testimony relied upon and introduced

to convict defendant of manslaughter, he was guilty of murder and not manslaughter. The question presented then is whether, under the circumstances here involved, the testimony was admissible.

We think it was and so hold. Section 785 of the Revised Statutes of 1870 provides that: "There shall be no crime known under the name of murder in the second degree; but on trials for murder the jury may find the prisoner guilty of manslaughter," and it has been held repeatedly that the failure of the trial judge to so charge the jury vitiates the verdict, even though, in the opinion of the trial judge, the testimony showed that the defendant was guilty of murder and not manslaughter. State v. Hicks, 113 La. 779, 37 So. 753, and cases there cited.

It is settled also that, where an accused is prosecuted for murder and convicted of manslaughter, the result of such conviction is an acquittal of the charge of murder, and, in case the conviction for manslaughter is set aside on appeal and the case is remanded for retrial, the accused cannot again be prosecuted for murder, and, if tried again, must be tried for manslaughter. State v. Harville, 171 La. 256, 130 So. 348, and cases there cited.

It is contended by counsel for defendant that, when an accused is put on trial for manslaughter after having been acquitted of murder under the above-stated circumstances, testimony tending to show that the homicide was murder and not manslaughter is inadmissible. Or, to state the contention differently, it is that in such cases, if the court permitted the introduction of testimony showing that the defendant was guilty of murder, the jury could not convict him of manslaughter, and must therefore acquit him.

If that be the law, then in all such cases the accused would, even though guilty of an unlawful homicide, escape punishment altogether if the only testimony the state had was such as to establish the higher degree of homicide. But that is not the law. Testimony sufficient to convict an accused of murder is necessarily sufficient to convict him of manslaughter, which is a lesser degree of unlawful homicide. When one is charged with murder, he is also charged with manslaughter; the lesser crime being included in the greater. Clearly, if one be guilty of murder, he is guilty of manslaughter also, and, if the charge of murder be made out, so also is the charge of manslaughter.

The rule that a person charged with murder and convicted of manslaughter cannot again be prosecuted for murder is one which operates to the advantage of the accused. While he may be guilty of murder and the state may be prepared to prove his guilt, yet under the rule which prevails here and elsewhere he cannot be convicted of that degree of homicide. Under such conditions, he has no reasonable grounds to complain if the state adduces testimony tending to show that he is guilty of a higher degree of homicide, for which he cannot be convicted. It is not for him to say that he cannot be punished for the lesser degree of homicide merely because he is guilty of the higher degree, which is more severely punishable.

In all cases like the present, where an accused is prosecuted under an indictment for murder, convicted of manslaughter, and

thereby acquitted of murder, if there is a second trial, which can be for manslaughter only, all testimony which was admissible on the first trial is admissible on the second, whether the testimony showed murder or manslaughter. The trial judge so ruled, and we approve his ruling. The following cases support this view: People of California v. McFarlane, 138 Cal. 481, 71 P. 568, 72 P. 48, 61 L. R. A. 245; Ferguson v. State, 141 Ala. 20, 37 So. 448; Barnett v. People, 54 Ill. 325; Commonwealth v. McPike, 3 Cush. (Mass.) 181, 50 Am. Dec. 727; People v. Huntington, 8 Cal. App. 612, 97 P. 760.

"Where, upon a trial for murder, accused is convicted of manslaughter and thereby acquitted of murder, the court upon a subsequent trial for manslaughter, the first conviction having been set aside, may instruct the jury that, if they believe the accused to be guilty of murder, that of itself will not justify them in acquitting him of manslaughter, in as much as the law only regards him as guilty of manslaughter." 30 Corpus Juris, 410.

■ The defendant was on trial for manslaughter, and, in order to convict, the burden was upon the state to prove that the homicide was willful and felonious and not justifiable. The defendant having entered a plea of not guilty, the state had the right to anticipate that the defense would be either that accused was not involved in the slaying or that the homicide was justifiable. The burden, was upon the state to prove, not only that he actually participated in the slaying, but also to prove every element of the crime of manslaughter, the essential ingredient of which crime is that the slaying is without justification. In order to make out its case, the state was within its legal rights when it offered testimony to show that defendant participated in the slaying and that the homicide was not justifiable. These facts it had to prove in order to sustain the prosecution. The testimony offered to prove these facts points to the crime of murder and not manslaughter, and was objected to on the ground that the state was attempting to prove malice, which is not an essential element of manslaughter. The testimony was not offered for that purpose, but to show lack of justification, and the fact that malice might be inferred from the testimony adduced for that purpose afforded defendant no reasonable ground for complaint, since he could not be convicted of the more serious crime.

In State v. Crump, 116 La. 978, 41 So. 229, 230, the defendant was prosecuted for manslaughter, and there was testimony tending to show that the accused was actuated by malice. Defendant sought a reversal of the verdict on the ground that such testimony vitiated the verdict. But the court in passing on the point said:

"It is well settled, so much so that it is not necessary to cite decisions, that in order to obtain relief on appeal it must appear that the error committed was prejudicial to defendant's cause. Here it is very evident that it was not prejudicial. The defendant has no good ground upon which to stand in urging that the verdict should not have been affirmed because it appeared by the testimony that there was malice; and that he had been actuated by malice."

There is dictum to the contrary in State v. McGarrity, 139 La. 430, 71 So. 730. In that case the accused was on trial for manslaughter, and the court permitted the introduction of testimony showing that defendant had at some time prior to the homicide made statements which indicated that he intended to kill the deceased. This court stated, in commenting on the point, that the testimony was inadmissible because it tended to show malice on the part of the accused, which testimony, it was said, was not admissible, for the reason that the accused was on trial for manslaughter and not murder.

In State v. Woods, 161 La. 863, 109 So. 519, 520, a similar situation was presented. The accused, who was prosecuted for manslaughter, had written a letter to deceased which indicated that he intended to kill him and from which letter malice might be inferred. The trial court permitted the introduction of the letter, and his ruling in so doing was made the basis of a bill of exception. His ruling was approved by this court. The situation presented in the Woods Case was almost identical with that presented in the McGarrity Case, about the only difference being that in the Woods Case the accused had written a letter to deceased which indicated that he intended to slay him, whereas in the McGarrity Case the accused had made statements to Dr. Mosely indicating his intention to take the life of the deceased. In the Woods Case the court said: "The decision in State v. McGarrity, supra, in so far as it conflicts with the views herein expressed, is overruled."

For the reasons assigned, the verdict and sentence are affirmed.