ROGERS, Justice.
 

 Willie Ruth Bedford, a negro girl under seventeen years of age, was prosecuted for murder, found guilty as charged without capital punishment and sentenced to imprisonment for life in the state penitentiary. This appeal followed.
 

 The errors of which appellant complains are embodied in sixteen bills of exception. We shall discuss only three of the bills.
 

 Bill No. 3 was taken to the following remarks made by the district attorney in his closing argument to the jury:
 

 “The law provides that a colored boy, guilty of a crime other than a capital crime, they send him out here on the road and punish him that way, but there is no provision for the colored girl, so far as I know. Anything less than a capital crime will fall under the supervision of a Juvenile Court, and a Juvenile Court may do nothing with a person of color, a girl under seventeen years of age, other than to turn her over to some responsible person who will care for her and look after her. * *
 

 ' Defendant objected to the remarks as constituting an attempt on the part of the district attorney “to prejudice the jury into returning a greater verdict, and as being a misstatement of the law.” Defendant’s objection was overruled. The trial judge says in his per curiam that the statement of the law made by the district attorney was substantially correct, but if the statement was not correct, the verdict should not be set aside on that account. The trial judge cites State v. Wren, 121 La. 55, 46
 
 *109
 
 So.
 
 99,
 
 and State v. Bacon, 138 La. 654, 70 So. 572, in support of his ruling.
 

 In addition to her objection, the defendant requested the trial judge to instruct the jury to disregard the statement of the district attorney, whereupon the trial judge instructed the jury as follows:
 

 “Gentlemen, you will disregard the remarks of the District Attorney, on the question of there not being any prison or place of detention, or whatever remarks he made, with reference to what shall be done with delinquent colored girls, in the event they are not found guilty of murder, in this case.”
 

 Defendant contends that the instructions given the jury by the trial judge were not sufficient to remove the prejudicial effect of the remarks of the district attorney. In support of her contention defendant refers to the testimony taken on her motion for a new trial, wherein it was shown that the jury, about twenty minutes after they had retired to the jury room for their deliberations, sent for' the sheriff and sought to find out from him what proceeding would be taken and what punishment could be inflicted in case defendant were declared to be a juvenile. The record does not disclose what, if any, answer the sheriff gave the jury in response to their inquiry. Later, the jury returned to the courtroom for the purpose of requesting the judge to advise them whether if defendant were not found guilty, there was a place or institution provided for the punishment of young delinquent negro girls. The trial judge refused to advise the jury as requested, coupling his refusal with the explanation that to do so might influence the jury in reaching a verdict they might not otherwise reach; that the matter of punishment was not the concern of the jury but was the concern of the court after the return of the verdict.
 

 We do not think the instructions of the trial judge were such as to efface from the minds of the jurors the impression made by the prejudicial statements of the district attorney. The trial judge, in instructing the jurors to disregard these statements, did not at the same time advise them that the statements were erroneous. As a matter of fact, the trial judge could not do this because, as shown by his per curiam, his views were in accordance with those of the district .attorney. In these circumstances, the trial judge could not, and he did not, make any serious effort to disabuse the minds of the jurors of the harmful effect of the statement of the district attorney.
 

 We do not think there is any question that the statement of the district attorney was highly prejudicial to the defendant. In the first place, the statement emphasized' the fact that the defendant was of the negro race, which was in itself an appeal to race prejudice; in the second place, the statement was in effect an appeal to the jury to convict defendant of murder because otherwise she could not be punished at all, since as charged by the trial judge, the jury could not return a verdict for manslaughter if the defendant was under seventeen years of age, which she was. The information which the jury sought to obtain, first from the sheriff,
 
 *111
 
 and then from the trial judge, as to whether if the defendant were found not guilty of murder, she could be punished as a juvenile, clearly indicates that the jury considered the possibility of returning a verdict of manslaughter if they could be assured that defendant could be punished as a juvenile offender. We think this bill shows reversible error.
 

 Bill No. 6 was also taken to a statement made by the district attorney in his argument to the jury. This statement was as follows:
 

 “This court room is crowded with colored folks, — has been crowded all day. It is necessary for you, the Jury, to show them that if you go out wilfully, maliciously and take the life of a fellowman, that you are going to get the same thing that Willie Ruth Bedford got * * *.”
 

 The statement was objected to by the defendant “as being an unfair attempt to prejudice the jury against this defendant who was of the colored race,” and defendant requested the trial judge to charge the jury “not to be prejudiced against the colored race.” The trial judge overruled the objection and declined to instruct the jury as requested. The bill sets forth that:
 

 “It is common public knowledge that in October, 1938, a negro man was lynched within two miles of Ruston, where this trial was being conducted, as a result of criminal assaults on two white women, and brutal attacks on their white men companions, one of the white men being killed. Several jurors in this case were living within four or five miles of the scene of the lynching and within the scene of said criminal assaults.
 

 “In the opinion of defense, said argument by the District Attorney was intended to, and did, prejudice the minds of the jurors against the defendant, who was of the colored race; and the refusal of the court to instruct the jury, as requested, was erroneous, and had the effect of further implanting said prejudice in the minds of the jurors.”
 

 The trial judge in his per curiam referred to the general proposition that the prosecution for crime has two objects, namely, one to punish the perpetrator and the other as a deterrent for others. The judge states that the district attorney was referring to the last mentioned object of the law and not to any prior lynching; that, in fact, the lynching referred to in the bill was- not mentioned by any one during the entire trial. The trial judge concluded his per curiam with the statement that in his opinion the argument was legitimate and proper.
 

 ■ The statement of the district attorney clearly referred to matters other than those contained in the record. The statement directed the attention of the jury to the fact that the defendant was a member of the colored race. It was an appeal to the prejudice of a jury, composed of white men, against the negro race. Its effect was to impress upon the jury the necessity of convicting the defendant in order to make the proper impression upon the negroes who had filled the courtroom
 
 *113
 
 all day. The trial judge in his per curiam says that the argument of the district attorney was legitimate and proper. He in effect so told the jury by declining defendant’s request to instruct them not to be prejudiced by the statement. It does not require any considerable argument to sup.port the proposition that the statement of the district attorney must have' been extremely harmful to the- cause of the defendant. This is so even though defendant is a negro girl who was convicted of having killed a negro man by a jury composed of white men. State v. Brown, 148 La. 357, 86 So. 912. We think this bill, too, exhibits reversible error.
 

 Bill of exception No. 10 was taken to the charge of the trial judge, wherein he instructed the jury that they could find only one of three verdicts, namely, guilty as charged; guilty without capital punishment ; or not guilty. In his general charge to the jury, the trial judge stated that on trials for murder the jury may find the accused guilty of manslaughter, provided the accused is not a juvenile delinquent. The judge in his general charge further stated to the jury that:
 

 “If you find from the evidence that the accused was under the age of 17 years at the time the alleged crime was committed, and upon consideration of the remaining evidence in the case, should you find that the accused is not guilty of murder, you should so find her; but as to the included offense of manslaughter, should you find that the accused is under the age of 17 years, you should report that you so find, and hence return no verdict touching the guilt or innocence of the accused as to that offense * * *.”
 

 Defendant objected to the charge of the trial judge, “as constituting a comment upon the facts of the case by the court and as being an improper charge in a murder indictment.” Defendant argues that the trial judge charged the jury in effect that the defendant was under the age of seventeen years, thereby commenting upon the facts, and that by not instructing the jury they could return a verdict of manslaughter, he deprived the jury of the right to return such a verdict, or to make any findings at all if the facts, in the opinion of the jury, showed the commission of the offense of manslaughter.
 

 The judge did not charge the jury that the defendant was under the age of seventeen years. He charged that if they found from the evidence that the accused was under that age and from the remaining evidence in the case she was not guilty of murder, they should report that finding and return no verdict. The charge of the trial judge was in accordance with the suggestion contained in the opinion of this Court in State v. West, 173 La. 974, 139 So. 304.
 

 On further consideration of the question, we have concluded that the method suggested in State v. West of charging the jury and returning the verdict may be calculated to confuse or mislead the jury and for that reason should' be revised. Murder is a capital offense. Rev.Stat. sec. 784. Being a capital offense, murder is within the exclusive original jurisdiction of the district court without reference to
 
 *115
 
 the age of the accused. Const.1921, art. 7, secs. 35, 51, 52. On a trial for murder, the jury may find the accused guilty of manslaughter. Rev.Stat., sec. 785. It has been held repeatedly that the failure of the trial judge to so charge the jury vitiates the verdict even though, in the opinion of the trial judge, the testimony shows that the accused is guilty of murder and not of manslaughter. State v. Elmore, 179 La. 1057, 155 So. 896. Since a juvenile may be prosecuted and convicted of murder, the age of a person accused of murder has no bearing on the question of his guilt or innocence and is not an issue in the case. The age of a person accused of murder, if he be a juvenile, becomes important only in the event the jury should find him guilty of manslaughter. In other words, a person accused of murder has no interest in showing that he is a juvenile unless and until the jury, by its verdict, finds that he is not guilty of murder but is guilty of what would constitute the crime of manslaughter if he were not a juvenile.
 

 When a juvenile is indicted for murder, only the jury can decide whether a felonious homicide was committed and if so, whether the homicide was murder or manslaughter. But when the jury decides that the crime was not murder but manslaughter, the verdict does not mean that the juvenile should be dealt with and punished as a felon, but it means that the juvenile should be dealt with in the juvenile court as a delinquent child in the manner provided by special laws. The question of whether a person convicted of manslaughter is under seventeen years of age is a question of fact relating to the jurisdiction, and is to be determined by the trial judge without the intervention of a jury, and only if a verdict of manslaughter is returned, in a proceeding instituted for that purpose. The judgment rendered by the trial judge in such a proceeding is always subject to review by the appellate court.
 

 Our conclusion is that the trial judge should not make any distinction in his general charge to the jury between a juvenile and an adult prosecuted for murder; that where the accused in a murder prosecution is a juvenile, the trial judge should instruct the jury as to the verdict it may render in the same manner he is required under the law to instruct the jury where the accused in a murder prosecution is an adult, namely, that the jury may return one of four verdicts — guilty as charged; guilty without capital punishment; guilty of manslaughter; and not guilty. Should a verdict of guilty of manslaughter be returned in the case of an accused who may subsequently show that he is a juvenile, the verdict would have the effect of acquitting him of murder but not of discharging him entirely. The effect of the jury’s finding that the crime committed was not murder but manslaughter would be to hold the accused as a delinquent juvenile, subject to trial and punishment in the juvenile court.
 

 For the reasons assigned, the conviction and sentence appealed from are annulled and the case is remanded to the district court for a new trial.