3 So.2d 285

### STATE v. RICHEY.

No. 36178.

May 26, 1941.

Rehearing Denied June 30, 1941.

See, also, 195 La. 319, 196 So. 545.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Asst. Atty. Gen., and A. V. Hundley, Dist. Atty., Ben F. Thompson, Jr., Asst. Dist. Atty., and T. F. Hunter, Sp. Counsel, all of Alexandria, for State, appellee.

John R. Hunter & Son, of Alexandria, for defendant and appellant.

HIGGINS, Justice.

The accused was originally indicted and tried for the murder of Bill Morgan. The case resulted in a mistrial. The district

attorney then filed a bill of information against the accused for manslaughter and on the trial thereof he was convicted and sentenced to not less than six nor more than eighteen years in the State Penitentiary. He has appealed and relies upon three bills of exception for the annullment of the verdict and sentence of the court.

The defendant and his family and the deceased and his family occupied a building which they jointly rented as a residence. It appears that, at the expiration of the lease, the defendant, without the knowledge of the deceased, rented the entire building for himself and his family only. The deceased remonstrated with the accused for having taken this action without informing him, and an argument ensued. The theory of the defense was that the defendant shot and killed the deceased while being attacked by the deceased and his son. The State undertook to show the jury that the accused killed the deceased, without any provocation whatsoever, while he was sitting on the front gallery reading a newspaper, and that after he was mortally wounded, in attempting to avoid the defendant, the deceased fell to the ground, whereupon, the accused fired the third and final shot into the back of his head.

█ Bill of exception No. 1 was reserved to the ruling of the trial judge in permitting the introduction by the State, in evidence, of the clothing worn by the deceased at the time of the homicide. Counsel for the defense state that, as there was no dispute as to the location of the wounds on the body of the deceased, there was no legal basis for the introduction of the garments in evidence and that this illegal evidence was highly prejudicial to their client because it inflamed the passion of the jury. The State argues that the testimony was not at all certain as to the location of the wounds in the body of the deceased and that this evidence was admissible not only to show the location of the wounds but to corroborate the testimony of the State's witness and to refute the testimony of the defendant's witnesses.

No objection was made as to the identity nor to the condition of the clothes.

The trial judge, in his per curiam, states:

"According to the testimony the deceased was shot three times by the accused; two of the shots struck the front portion of the body and the other struck the back of the deceased's head. The accused's defense was self-defense. * * * There was a question as to which shot was fatal, or whether each shot was fatal or could have disabled the deceased, and, of the course, the question arose as to which of the shots or each of them hit a vital spot. Therefore, it was material to show the exact location of each shot, and it was for that purpose that the District Attorney offered the garments worn by the deceased at the time. The coroner, who viewed the body, testified that he could not recall the exact point where the two bullets hitting the front of the body entered, it having been so long since it occurred. Likewise, the other witnesses who viewed the body were unable to give the exact location of those two shots; they all seemed certain, however, that one shot hit the back of the head. The Court permitted the garments to be

exhibited to the jury in order that the shot holes in them would assist the jury in determining with more certainty as to the exact location on the body where the shots took effect.

"The State's witnesses had testified as to the position of the deceased and the accused when the first two shots were fired. The introduction of the clothes also was permitted in corroboration of their testimony."

From the record, it appears that there was a dispute as to the location of the wounds, as well as the position of the parties when the fatal shooting occurred. The evidence was, therefore, admissible to show the exact location of the wounds, in order to aid the jury in determining whether or not the accused was guilty or innocent of the crime charged.

■ In Wharton's Criminal Evidence, 11th Vol., Section 752, page 1278, the rule is stated as follows:

"* * * As an instance, the clothing of the victim of a homicide, if properly identified may be exhibited, on the principle that it is a part of the res gestae, to illustrate the nature of the wounds, to show the manner and means of death, or to throw light upon any material matter at issue which is controverted or in doubt. In like manner, this type of evidence generally i. e., real and demonstrative evidence, has been held admissible for the following probative purposes: To corroborate the testimony of a witness; to show the commission of the crime charged; to connect the accused with the commission of the crime; to explain and throw light on the criminal transaction; to show the nature of an instrument used in a crime of violence; to show malice, knowledge and preparation, purpose, intent, or a lustful disposition; to show the ability to commit a crime; to show that a person accused of homicide was armed when he went to the scene of the crime; to illustrate the nature of a wound; and to show the ownership and value of stolen property. Evidence of this nature is also admissible to contradict the defendant's theory concerning the commission of the crime charged. * * * *"

See also the same work, Section 757, page 1282, and Section 758, page 1283.

The above rule of evidence is also recognized and followed in this State. State v. Craft, 118 La. 117, 42 So. 718.

The foregoing per curiam and the authorities cited show that this bill is not well founded.

Bill of exception No. 2 was taken to a portion the charge of the trial judge to the jury on two grounds: First, that it was inapplicable to a manslaughter case; and, second, that the charge as given was equivalent to a comment on the facts by the trial judge and was highly prejudicial to the defendant.

Prior to giving the portion of the charge objected to by the defense counsel, the trial judge had instructed the jury in detail on the crimes of murder and manslaughter and had distinguished the two crimes and had also given the jurors detailed instructions on the law of self-de-

fense. · The portion of the charge objected to reads as follows:

"Using a deadly weapon against an unarmed adversary, who is retreating or being driven back, is entirely inexcusable.

"As a general rule, pursuing a retreating adversary and killing him is not justifiable as done in self-defense, though the deceased brought on the difficulty or made the first assault—So shooting and killing an assailant after he had been disarmed, and while he was standing with his back to the slayer, is murder and not justifiable in self-defense. So, if a person inflicted a wound upon another while acting in self-defense, and afterwards inflicted another after his antagonist had declined all further combat and was fleeing from him, and each wound was sufficient to have produced death, he may be adjudged guilty of murder in inflicting the last wound, if it contributed to the death, though had it not been inflicted the deceased would have died from the wound given him in necessary self-defense; but if the latter wound did not contribute to death, he is not guilty of any degree of homicide."

█ It is not contended that the charge as given by the judge is incorrect, but simply that it is inapplicable to the case at bar for the reason that the defendant was being tried for manslaughter and not for murder. The trial judge, in his per curiam, states:

"In giving the charge complained of, I read from the law (Sec. 313 and the latter clause in Sec. 312 of Wharton on Criminal Law, 2nd Vol.) and so advised the jury when I read same to them. Testimony had been introduced tending to show that the accused shot the deceased twice in front, then the deceased backed away as if endeavoring to get away from the accused, retreating some distance and fell upon his face and the accused advanced upon him and fired a third shot in the back of deceased's head. I, therefore, charged the above law as being applicable.

"Accused relied upon the plea of self-defense. By reading this particular law it will be seen that it lays down the general rule relating to pursuing a retreating adversary and killing him as bearing upon the right to claim self-defense; also it deals with the shooting and wounding of an adversary two or more times, explaining that if death had already ensued at the time of the last shot, then the defendant is guilty of no degree of homicide, which certainly could not have the effect of prejudicing the jury against the accused. It is true that the charge explains that the killing would be murder under certain circumstances, but the charge is nevertheless proper and not prejudicial, because of the fact that manslaughter (with (for) which the accused was being tried) is included in murder and, in charging on manslaughter it is also necessary to explain to the jury the elements of murder so that they can understand the difference in the two crimes. In the other parts of my charge I explained to the jury quite fully that the accused was not on trial for murder, but was being tried for manslaughter only, and that there was one of only two verdicts they could reach, one was guilty as charged, which was manslaughter, and the other not guilty.

"I did not state nor recapitulate the evidence to the jury, nor repeat to them the testimony of any witness, nor give them any opinion as to which facts had been proved or disproved.

"I charged the jury that they were the sole judges of the facts."

In Wharton's Criminal Evidence, 12th Edition, Section 604, page 817, it is stated:

"Where the mortal blow is deliberately given after the deceased is helpless, offense is murder. Where a party, after he has got the better of the other, holds him prostrate and defenseless, the reception of a prior blow will not reduce the grade to manslaughter. This proposition, in fact, is a corollary of that which makes a blow no mitigating provocation when there is a manifest disparity of strength between the parties. For even where no such disparity at first exists, the principle holds good when by the result of the conflict one party is disarmed, or becomes otherwise helpless."

In the case of State v. Elmore, 179 La. 1057, 155 So. 896, 900, the first question presented here—that the charge was not applicable to a manslaughter case—was answered by the court as follows:

"In State v. Crump, 116 La. 978, 41 So. 229, 230, the defendant was prosecuted for manslaughter, and there was testimony tending to show that the accused was actuated by malice. Defendant sought a reversal of the verdict on the ground that such testimony vitiated the verdict. But the court in passing on the point said:

" 'It is well settled, so much so that it is not necessary to cite decisions, that in order to obtain relief on appeal it must appear that the error committed was prejudicial to defendant's cause. Here it is very evident that it was not prejudicial. The defendant has no good ground upon which to stand in urging that the verdict should not have been affirmed because it appeared by the testimony that there was malice; and that he had been actuated by malice.' "

See also, State v. Woods, 161 La. 863, 109 So. 519, 520, overruling State v. McGarrity, 139 La. 430, 71 So. 730.

As to the second point, that the charge amounted to a comment on the facts by the trial judge, we fail to find where the judge commented on the facts of the case. It was a mere coincidence that certain testimony as to the defendant's acts might be considered by the jury as having brought his case within the charge, but there was evidence tending to show that the accused shot the deceased in the back of the head the third time while he was lying face down and helpless on the ground.

In Marr's Criminal Jurisprudence, Second Edition, Section 678, it is stated:

" * * * Much discretion is necessarily left to the judge before whom the case is tried in expounding those principles of law which will enable the jury to arrive at a correct verdict. From the very nature of the duties assigned him, he must necessarily consider the facts proved in his hearing, in order that he may give an appropriate charge. * * *

"The judge charges upon the facts when he expresses an opinion upon what has been proven to the jury, or when he assumes a given state of facts as proven, but not where he expresses his opinion of the law arising from a state of facts which may or may not have been established before the jury, and upon the proof of which he abstains from intimating any opinion."

In the case of State v. Markham, 15 La. Ann. 498, the Court, in answering the accused's objection to the charge to the jury, upon the ground that it touched the facts, stated:

"The Judge has not stated, nor recapitulated the evidence, so as to influence the decision of the jury on the facts; he has not stated, nor repeated to them the testimony of any witness; nor has he given any opinion as to what facts have been proved or disproved. The objection, consequently, has no foundation."

In State v. Lenares, 12 La.Ann. 226, we find the following:

"The Judge has the right to assume, in his instructions to the jury, a hypothetical state of facts, and say to the jury, if they believe such a state of facts to be proved, that it amounts to a commission of the crime or offence charged."

In State v. Smith, 124 La. 1035, 50 So. 842, it was held:

"The trial judge in his charge to the jury, while defining the crime of embezzlement with which defendant was charged, made use of an illustration of what an embezzlement was which it would appear brought defendant's case directly under the evidence. Defendant urges that by so doing the trial judge prejudiced the jury and commented on the evidence. It is not claimed that the illustration given was not legally correct. If it was, it was for the jury to determine whether under the evidence the defendant's case fell under it or not. The judge made no comment in the evidence."

It is our opinion that this bill is without merit.

Bill No. 3 was reserved to the court's refusal to grant a new trial, the motion therefor being predicated upon the objections to the evidence and the charge, contained in Bills Nos. 1 and 2, respectively, which we have already discussed. It was also stated that the verdict is contrary to the law and the evidence. In the per curiam on this bill, the trial judge stated: "The evidence in this case was ample to warrant the verdict of the Jury." Therefore, this bill is likewise unfounded.

For the reasons assigned, the verdict of the jury and the sentence of the court appealed from are affirmed.