458 So.2d 597 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Daniel D. FLOYD, Defendant-Appellant.
No. CR83-1154.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
Rehearing Denied November 26, 1984.
*598 Bertrand De Blanc, Sr., Abbeville, J. Lyle De Belleveue, Crowley, for defendant-appellant.
J. Nathan Stansbury, Dist. Atty., Lafayette, for plaintiff-appellee.
Before FORET, STOKER and KNOLL, JJ.
STOKER, Judge.
Defendant, Daniel D. Floyd, appeals from his jury conviction of attempted first degree murder for which he was sentenced to a term of fifty years in the custody of the Department of Corrections. We affirm.

FACTS
Defendant's conviction arose from the shooting of Louisiana State Trooper Ferdie Miller during the early morning hours of May 15, 1983. Sometime around midnight, Trooper Bradley Breaux observed the defendant in a black truck traveling at approximately 80 m.p.h. eastbound on Interstate 10. Trooper Breaux turned on his flashing lights and siren and began pursuing the vehicle. The defendant, aware that he was in possession of a stolen truck, a stolen gun, and an illegal drug and that a federal warrant had been issued for his arrest, accelerated in an attempt to get away from Trooper Breaux.
Trooper Breaux's request for assistance was answered by Trooper Miller who also turned on his lights and siren. The defendant passed Trooper Miller and both police cars continued pursuit. The defendant exited the interstate at Louisiana Highway 35 into the town of Rayne. Trooper Miller remained close behind, and Trooper Breaux continued to the next intersection in an attempt to cut off a possible escape route. In his attempt to lose Trooper Miller in a residential section of Rayne, the defendant failed to negotiate a right turn and ran into a ditch.
According to Trooper Miller, he stepped out of his car and asked the defendant to *599 exit from his truck. He testified that the defendant got out of the truck, wedged himself between the cab and the door, and opened fire. Trooper Miller stated that he was shot twice in the chest before drawing his weapon and returning fire, and was shot twice more in his hip and foot as he moved for the cover of some trees. The defendant testified that he heard breaking glass and felt a bullet striking his chest before he exited from the truck and opened fire to cover his escape. Gary Wasnick, a hitchhiker who was picked up by the defendant earlier in the evening, corroborated Trooper Miller's version of the incident. He testified that the defendant exited from the truck and opened fire, at which point Mr. Wasnick dived for the floorboard.
Defendant fled the scene and collapsed more than 200 feet from his truck. Other law enforcement officials located the defendant by following the trail of blood from his truck. First aid was administered and both Trooper Miller and the defendant were transported by ambulance to the hospital.
On appeal, defendant argues that the trial court erred in the following respects:
1. In limiting his peremptory challenges to jurors to eight rather than twelve as previously allowed by statute;
2. In finding that the defendant had the specific intent to kill the officer, an essential element of the crime of attempted first degree murder;
3. In failing to appoint a sanity commission to examine defendant's mental capacity to stand trial, and;
4. In failing to grant a change of venue.

PEREMPTORY CHALLENGES
The defendant specified three assignments of error dealing with the matter of challenges to jurors, and we will consider all three under this heading.
With regard to the number of peremptory challenges, the defendant asserts that the trial court applied Act 495 of 1983 amending LSA-C.Cr.P. art. 799 in an ex post facto manner. Act 495 reduces the number of peremptory challenges available to the State and the defendant from twelve to eight. Its effective date was August 30, 1983, prior to defendant's trial which began on September 27, 1983. Defendant claims that he had a vested right to twelve peremptory challenges under the law as it provided on the date he committed the offense, May 15, 1983.
It appears that the defendant did not raise this constitutional ground at the time he objected. After defendant's counsel challenged one of the jurors, Mr. Frank Pierce, for cause, the following exchange took place between the trial judge and counsel for the defendant:
"THE COURT: All right. Well, I still believe he's qualified.
MR. DEBLANC: Your Honor, we have no more peremptory [sic] challenges.
THE COURT: I understand.
MR. DEBLANC: And so we will object to the Court's ruling and make a part of the objection the questions and answers, and the Court's ruling.
THE COURT: Yes.
MR. DEBELLEVUE: The Court has already ruled that he's acceptable?
THE COURT: Yes. Yes. I'm satisfied that he can lay it aside and"
It is well settled that the grounds for an objection must be stated at the time an objection is made and that the grounds for it cannot be urged for the first time on appeal. State v. Clayton, 427 So.2d 827 (La.1983). It is apparent from the colloquy quoted above that defendant did not assert his ex post facto argument; therefore, he is precluded from raising it on appeal.
Assuming for the sake of argument that the objection made was sufficient to bring the issue of the application of Act 495 before the court, it is our opinion that the act was properly applied.
It has long been the law that a defendant in a criminal case has a constitutional right to challenge jurors peremptorily; however, the number of those challenges is to be fixed by law. LSA-Const. of 1921, art. 1, sec. 10 and LSA-Const. of *600 1974, art. 1, sec. 17. If the statute providing for the number of peremptory challenges is merely procedural, it may have retroactive effect without violating the constitutional prohibition against ex post facto laws. State v. Sepulvado, 342 So.2d 630 (La.1977). If the statute is found to be substantive law, defendant would have the right to the number of challenges provided for by law at the time he committed the offense.
Our Supreme Court has held in State v. Elmore, 179 La. 1057, 155 So. 896 (1934), that the article regulating the number of peremptory challenges is procedural and not substantive. We find that holding applicable to the case before us. Even though the exercise of peremptory challenges is a "substantial" right as recognized by the court in State v. Sugar, 408 So.2d 1329 (La.1982), the number of challenges to be made is a procedural matter.
Jurisprudence has established certain criteria to consider in determining whether a law is ex post facto. After reviewing these criteria, the court in State v. Sepulvado, supra, made the following observation:
"As the issue is viewed in the context of this case the Court must decide whether the statute materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed. At the same time, it must be recognized that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense for which he is charged." (citations omitted)
We do not find that the change in the number of peremptory challenges materially impaired the right of this defendant to have his guilt determined according to the law as it was when the offense was committed.
In support of his position that the number of peremptory challenges is a matter of substantive law protected by the prohibition against ex post facto laws, defendant quotes the following language from State v. Monroe, 366 So.2d 1345 (La.1978):
"Therefore, an erroneous ruling of a trial judge which deprives a defendant of one of his peremptory challenges constitutes a substantial violation of a constitutional or statutory right requiring reversal of his conviction and sentence. La.Code Crim.P. art. 921."
We do not believe that the above language constitutes a holding that the number of peremptory challenges is a constitutional right. Rather it is a procedural right established by statute. The language used by the court in the paragraph quoted above simply tracks the language of LSA-C.Cr.P. art. 921 as it provided prior to amendment by Act 86 of 1979. Prior to amendment, that article provided in pertinent part:
"A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of... constitutes a substantial violation of a constitutional or statutory right."
The trial court's rulings regarding challenges to jurors do not constitute error.
Defendant claimed in one of his assignments of error concerning challenges to jurors that the trial court improperly denied his challenge for cause as to prospective juror Mr. Paul Olivier, who was later named jury foreman. This claim was not argued in brief on appeal and is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982). In any event, the record reveals that there was in fact no challenge for cause made as to Mr. Olivier.

SPECIFIC INTENT
Defendant argues that his motion for new trial should have been granted because the jury verdict was contrary to the law and the evidence in that the State did not prove that he had a specific intent to kill the victim.
It is well settled that the standard of review to be applied to the issue of sufficiency of the evidence is whether, after *601 viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty. Specific intent is a state of mind which need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982).
Defendant argues in the present case that his intent was to simply escape, not to kill. His clear intent to escape does not prove he had no intent to kill, but it does give him a clear motive. Defendant also contends, as he did at trial, that the officer fired first, and he simply returned fire. We note that Trooper Miller knew only that defendant was guilty of a traffic violation at the time the truck stopped. The jury, after hearing all of the evidence, obviously did not believe defendant's version of the incident. Defendant fired eleven times at the officer, emptying his gun cartridge and hitting the officer four times. In viewing the evidence in the light most favorable to the prosecution, it is our opinion that a rational trier of fact could easily find that the defendant had a specific intent to kill the officer.

SANITY COMMISSION
By this assignment the defendant asserts that he presented sufficient evidence of his mental incapacity to proceed to trial to justify appointment of a sanity commission, and that the trial court erred in failing to do so.
The only evidence given at the hearing on the motion to order the appointment of the commission was the testimony of the defendant himself. The trial court denied the motion for the following oral reasons:
"BY THE COURT: Article 643 states that the Court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed; and I have heard nothing here today that makes me doubt his capacity to proceed. He has an excellent memory, can name all of the drugs he was taking even as a juvenile. He is coherent. He knows the dates of his incarcerations, the reasons why he was in the Block, why he was not. He admitted making notes, writing questions for his counsel to ask previously. He doesn't show his situation has changed. He's not a drug addict; he hasn't been on drugs. There's nothing to indicate that he can't assist his counsel. He claims confusion; I haven't seen any confusion at all. He's not so confused that he would name one of the coke dealers, because he knows the possible consequences there. The Court will deny the Motion."
The decision to appoint a sanity commission is a matter within the sound discretion of the trial judge, and his decision will not be reversed absent a clear showing of an abuse of discretion. State v. Wilkerson, 403 So.2d 652 (La.1981). The trial judge gave clear reasons for denying the motion for appointment of a sanity commission, and there does not appear to be a clear abuse of his discretion. The motion was properly denied.

CHANGE OF VENUE
Defendant argues that the trial court committed error in denying his motion for a change of venue. Defendant argues that as a result of newspaper, television, and radio coverage, prejudice was created in the minds of the public in Acadia Parish to such an extent that he could not receive a fair and impartial trial. The only evidence presented at the hearing on this motion was a newspaper article appearing two days after defendant's arrest. The trial judge in denying the motion indicated that the article was a factual representation of the incident and did not show bias and prejudice in the community. We agree.
A review of the voir dire examination does not reveal the existence of any prejudice in the community against the defendant. Although some of the prospective jurors recalled hearing something about the *602 incident in the news, none had formed any positive opinions as a result of those reports. The motion for a change of venue was properly denied.
For the above reasons, the defendant's conviction is affirmed.
AFFIRMED.