477 So.2d 875 (1985)
STATE of Louisiana
v.
Alexanda M. SMITH.
No. KA-2580.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1985.
*876 William A. Roe, Belle Chasse, for defendant-appellant.
William Guste, Jr., Atty. Gen., New Orleans, State of Louisiana.
Leander H. Perez, Jr., Dist. Atty., Point a la Hache, Gilbert V. Andry, III, Asst. Dist. Atty., New Orleans, for State.
Before SCHOTT, KLEES and BYRNES, JJ.
BYRNES, Judge.
On April 7, 1983 Alexanda M. Smith was charged, by grand jury indictment, with attempted first degree murder in violation of R.S. 14:27, 30. A lunacy commission appointed by the trial judge reported on September 3, 1982 that Smith was insane and unable to proceed to trial. He was committed to a forensic institution until June 3, 1983, at which time he was found to be sane by the same lunacy commission. Smith was arraigned on August 8, 1983 and plead not guilty and not guilty by reason insanity. After a jury trial held on January 3-4-5, 1984, he was found guilty of attempted second degree murder in violation of R.S. 14:27, 30.1. A multiple bill was filed by the State, and Smith was sentenced to seventy-five years at hard labor *877 as a multiple offender. This appeal followed.

FACTS
On August 27, 1982 at about 11:30 a.m., Fred Spicer and Agnes Beard were fishing in Sunrise when the defendant came up to them and began a conversation about fishing. Shortly thereafter, he struck Mr. Spicer on the head with a rock, pulled out a butcher knife, held it to Ms. Beard's throat and demanded money. He searched Mr. Spicer's pockets and found no money. He then ordered the two victims to walk back to their car. During this walk, Smith told the victims to get down low to avoid being seen. Mr. Spicer attempted to escape, but Smith held the knife to Ms. Beard's throat and forced Mr. Spicer to return. When the trio got to the car, the defendant ordered Mr. Spicer to drive down the levee. After they stopped, the defendant, who was riding in the back seat with Ms. Beard, stabbed Mr. Spicer in the shoulder. Both victims got out of the car and ran in different directions. Smith ran after Mr. Spicer, stabbing him several times. Mr. Spicer was able to get away from the defendant and back to his car. He then drove to Petrovich's grocery where he sought help. In the meantime, the defendant caught up with Ms. Beard and raped her. Ms. Beard was able to get away from the defendant when they heard sirens and the defendant became frightened and ran. Smith was apprehended about 30 minutes later in the same area.
We have reviewed the record of Smith's conviction for errors patent and have found none. We have also reviewed the evidence to determine if it was sufficient to support a conviction.
Smith was convicted of attempted second degree murder. R.S. 14:27(A) states that:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Second degree murder is defined in R.S. 14:30.1 as:
... the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Intent may be infered from the circumstances and need not be proven directly R.S. 15:445.
Here, both Ms. Beard and Mr. Spicer testified that Smith repeatedly stabbed Mr. Spicer without provocation. Smith urged the affirmative defense of insanity under R.S. 14:14. However, Dr. Andrew Sanchez, one of the psychiatrists on the lunacy commission appointed by the court, testified that while Smith was unable to stand trial in September of 1982, it was his opinion that Smith knew the difference between right and wrong in April of 1982 when the crime was committed.
To successfully urge the defense of insanity the defendant must show that:
Because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question. R.S. 14:14
In our opinion Dr. Sanchez's testimony was sufficient to preclude a finding of insanity as defined by R.S. 14:14.
Throughout a thorough cross examination Dr. Sanchez maintained his opinion that the defendant could tell right from wrong at the time of the offense. His opinion was bolstered by that of Dr. Smith, the other psychiatrist on the lunacy commission. No evidence of a contrary opinion was introduced by the defense. Under these circumstances we conclude that the *878 affirmative defense of insanity was not proven. Moreover, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact, that could have found the defendant guilty beyond a reasonable doubt of attempting to kill Mr. Spicer.
Defendant originally specified 14 assignments of error. However, assignments 3, 5, 6, 7, 9, 10, and 14 were not briefed and are therefore considered abandoned. State v. Joseph, 425 So.2d 1261 (La.1982).

ASSIGNMENT OF ERROR I
By his first assignment of error, defendant urges that the trial court committed reversible error by denying his motion for a continuance. We do not agree.
The motion was based on the unavailability of Dr. Charles Smith, the other psychiatrist on the lunacy commission which examined the defendant.
C.Cr.P. art. 710 provides:
When a motion for a continuance is based on the absence of a material witness, and the adverse party admits that if the witness were present he would testify as stated in the motion, the court may proceed to the trial of the case. If the court is on the opinion that despite the admission, the case cannot be tried with justice to the applicant, it may require the adverse party to admit also the truth of the testimony as a condition of refusing to grant the continuance.
At the hearing on the motion, the State stipulated that Dr. Smith would have testified to everything alleged in the motion. In addition, Dr. Sanchez, the other member of the lunacy commission, was available and did testify. The State also contended that Dr. Smith's testimony would be repetitive of Dr. Sanchez's and was therefore unnecessary. Under these circumstances, the trial court's denial of the motion was not an abuse of the discretion granted him by C.Cr.P. Art. 710. This assignment is without merit.

ASSIGNMENT OF ERROR 2
By this assignment, defendant challenges the trial court's ruling limiting the number of peremptory challenges allowed the defense during jury selection. At the time of the offense, C.Cr.P. Art. 799 allowed a defendant such challenges. However, in 1983, the article was amended and the number of peremptory challenges was reduced from twelve to eight. It is defendant's contention that this change was substantive and that the trial court's limitation on the number of peremptory challenges allowed him was an unconstitutional, ex post facto, application of the amended article. We do not agree.
While this circuit has not addressed this question, we are in agreement with the conclusion reached by the 1st and 3rd circuits in similar cases. See State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir.1984), State v. Floyd, 458 So.2d 597 (La.App. 3rd Cir.1984).
In both those cases, an extensive analysis of the prohibition against ex post facto laws and the nature of the defendant's right to peremptory challenges led the court to conclude that:
Although a criminal defendant has a constitutional right to challenge peremptorily, his right to a specific number of challenges is statutory. The reduction of the statutory number of peremptory challenges does not affect the nature of the crime, the authorized punishment or evidentiary rules. The statutory right to a specific number of peremptory challenges relates to the mode (procedure) utilized to determine guilt. As such, the applicability of Act 495 [the act which amended C.Cr.P. art. 799] is determined by the time when the trial commences and not the time when the offense was committed. State v. Bennett, supra, at 1176.
We are in agreement with this conclusion and therefore hold that C.Cr.P. Art. 799, as amended by act 495 of 1983, was applicable to the defendant's trial, which commenced after the effective date of the amendment. *879 The trial judge was therefore correct in limiting the defense to 8 peremptory challenges. This assignment is without merit.

ASSIGNMENT OF ERROR 4
By this assignment, defendant contends tht the trial court erred in refusing to dismiss a juror for cause. The challenge occurred when a juror stated during voir dire that he considered the insanity defense an "easy out" and that it would be hard to prove to him that the defendant was insane at the time of the offense. The relevant portion of the voir dire is as follows:
MR. BUSTIN:
I think the plea of insanityI think it is an easy out.
MR. ROE:
So, you are automatically skeptical and suspect of a plea of insanity. So, you may not be as perceptive and open minded as you would to other testimony of a different nature.
MR. BUSTIN:
It would be hard to prove to me that he was insane at the time.
MR. ROE:
It would be harder than it would be to let's say to prove self defense.
MR. BUSTIN:
Yes.
MR. ROE:
Your Honor, I will make the challenge.
MR. KLEIN:
May I ask the juror a few questions?
THE COURT:
Yes.
MR. KLEIN:
Mr. Bustin?
MR. BUSTIN:
Yes.
MR. KLEIN:
Mr. Bustin, everyone has certain prejudices and certain tendencies and so forth. But, the question here is, if you were chosen as a juror and the Judge instructed you fully as to insanity and so on and so forth, would you accept the Judge's instructions and could, after you heard all of the evidence, particularly any evidence with regard to insanity, would you be fair and impartial in deciding the issue of insanity as the Judge defines it for you? The question is, could you be fair and impartial?
MR. BUSTIN:
I would try that. That is all that I can say.
MR. ROE:
Your Honor, that is not a relevant question. The man must afford the defendant the opportunity to assert the law of the State and if he shows some reluctance towards affording the man that opportunity, then, that would not qualify him as a juror.
MR. KLEIN:
May I ask a question?
THE COURT:
Go ahead, Mr. Klein.
MR. KLEIN:
Mr. Bustin, if at the conclusion of this trial, you felt beyond a reasonable doubt that the defense had proven beyond a reasonable doubt that this defendant did not know right from wrong at the time that he committed these acts, could you then render a verdict of not guilty by reason of insanity?
MR. BUSTIN:
Yes.
MR. ROE:
Judge, the man has candidly and honestly showed some reluctancy that he has admitted some prejudices and that is a base for cause, your Honor.
MR. KLEIN:
The man has said that he could be fair and impartial and that he could render a verdict if the evidence is sufficient and that he could render a verdict of not guilty by reason of insanity. We do not expect perfect jurors. We object to the challenge.
THE COURT:
The Court is going to refuse the challenge.
We affirm this ruling. As a general rule, the trial court should sustain a challenge for cause when the prospective *880 juror's responses reveal facts which provide a reasonable basis for infering bias prejudice or inability to follow the law, notwithstanding the prospective juror's professed impartiality. State v. Smith, 430 So.2d 31 (La.1983). However, where a prospective juror makes a seemingly prejudicial statement but, upon further questioning, indicates an ability and willingness to decide the case impartially in accordance with the law and evidence, a challenge for cause is not warranted. State v. Heard, 408 So.2d 1247 (La.1982), State v. Bates, 397 So.2d 1331 (La.1981). Moreover, the trial court's exercise of discretion in ruling on challenges for cause should not be disturbed on appeal unless it was arbitrary or unreasonable. State v. Passman, 345 So.2d 874 (La.1977). Having reviewed the voir dire in this case, we cannot say that the trial judge abused his discretion by disallowing the challenge. The prospective juror indicated his willingness and ability to decide the case in conformity with the law. This assignment is without merit.

ASSIGNMENT OF ERROR 8
By this assignment, defendant contends that the trial court erred by allowing the State to paraphrase (in the form of hypothetical questions) a report prepared by a psychiatrist at the institution where defendant was confined pending trial, and ask Dr. Sanchez of the lunacy commission for his expert opinion as to the accuracy of the report's conclusions. The defendant argues that this was hearsay. We agree.
An expert cannot testify as to the opinions of another expert in the same field, nor can an expert's opinion be based on the opinions and conclusions of others. State v. Chapman, 410 So.2d 689 (La. 1982). It was error for the trial judge to allow the questions.
However, viewing the record as a whole, we cannot say that this was reversible error. Under C.Cr.P. Art. 921 only these errors which affect the substantial rights of the accused warrant reversal. In this case, it does not seem likely that Dr. Sanchez's opinion concerning the conclusions of another psychiatrist had a substantial impact on the jury's findings that defendant was sane when the offense was committed. In fact, the conclusions of this other psychiatrist were more adverse to the defendant than those of Dr. Sanchez. Moreover, taken as a whole, Dr. Sanchez's testimony leaves no doubt that he believed the defendant was sane at the time of the offense. Under these circumstances we find that this opinion was reinforced by that of Dr. Smith, the other psychiatrist on the lunacy commission. These opinions alone would have convinced a rational trier of fact that the defendant knew the difference between right and wrong at the time of the offense. The error of allowing Dr. Sanchez to testify as to the opinions of another psychiatrist was harmless.

ASSIGNMENTS OF ERROR 11 and 13
By these assignments, defendant challenges the trial court's finding that he was a multiple offender under R.S. 15:529.1. He also argues that his sentence was excessive. Defendant contends that the State failed to produce adequate proof that his plea of guilty to the predicate offense was free and voluntary. We agree.
When the defense objects to the use of a guilty plea as the predicate offense in an enhancement proceeding, the State has the burden of showing that the plea was freely and voluntarily made. State v. Holden, 375 So.2d 1372 (La.1979). As a general rule, a contemporaneously recorded transcript of the Boykin examination is the best method of satisfying this burden. State v. Bolton, 379 So.2d 722 (La.1979). However, it has also been held that a minute entry alone can be sufficient if it affirmatively shows that the defendant waived his Boykin rights, and the defense does not challenge the correctness of the entry. State v. Bland, 419 So.2d 1227 (La. 1982).
In this case, the state submitted the minute entry of defendant's prior guilty plea, but did produce a waiver of rights form or a transcript of the Boykin examination. *881 We have examined the minute entry, and find it insufficient to meet the State's burden of proof.
The minute entry reads as follows:
The matter was called and the accused, accompanied by his Court appointed counsel, appeared and requested that the original plea of not guilty and all motions be withdrawn and that rearraignment be ordered. The original plea of Not Guilty and all the motions was withdrawn and the rearraignment was ordered. The accused waived the reading of the Bill of Information and entered of pleas of Guilty to a lesser included offense Simple Robbery which was accepted by the State. The accused was advised of the nature of the charge as defined in the Criminal Code; of the right to trial, including the right to cross examine the witnesses for the State, to call witnesses for the defense and the right to take the stand if the constitutional exemption from testifying is waived; the right of appeal and of all the requirements of the Boykin jurisprudence. All of the foregoing rights were waived and the Court accepted the plea of Guilty.
All delays having been waived the accused was sentenced to serve 3 years in Parish Prison.
The deficiencies in this entry are readily apparent. For example, although the right to trial is mentioned, the right to a jury trial is not. Moreover, the wording of the right against self incrimination is confusing and there is no showing that the defendant was asked if he understood the rights he was waiving.
Under these circumstances it was error for the trial judge to sentence defendant as a multiple offender. We therefore vacate defendant's sentence and remand the case to the trial judge for resentencing at which time the State will have the opportunity to present further evidence of the defendant's status as a multiple offender. Because we have vacated his sentence, we do not address defendant's contention that it was excessive.
For the foregoing reasons the defendant's conviction is affirmed, his sentence is vacated and the case is remanded to the district court for resentencing in accordance with the law.
CONVICTION AFFIRMED, SENTENCE VACATED AND REMANDED FOR RESENTENCING.