| iPLOTKIN, Judge,
dissents:
Because I disagree with the majority’s analysis of the prejudice resulting from the defendant’s inability to call Dr. Ciro Juarez to testify in person at the trial, I respectfully dissent. I would reverse the conviction and sentence and remand the matter for a new trial.
The defendant contends that the trial court erred in denying his motion for a continuance filed on January 28, 1991, the day before his trial was scheduled to begin. In that motion, the defendant averred that Dr. Ciro Juarez, his treating psychiatrist since his arrest on July 10, 1989, had been personally served with a subpoena to appear and testify at the defendant’s trial. Although Dr. Juarez had previously agreed to this date, he left town without notice or permission on January 22, 1991, and indicated he would not return until February 6, 1991. Defendant contends that Dr. Juarez was “the main witness for the defense.” The defendant further contends that the State would not stipulate that “Dr. Juarez told Dr. Cox that the defendant tested positive for cocaine use” based on a Charity Hospital report, even though Dr. Juarez told “the defense the report was erroneous, because it was not a report on the defendant. After the trial court denied the defense’s motion for continuance, the State and defense entered into a stipulation regarding Dr. Juarez’s testimony. The next day, the morning of trial, the defense reurged its motion to continue based on additional information learned from Dr. Juarez the previous night through a taped phone conversation. The trial court listened to the tape in chambers, after which it denied the second motion to continue, finding that the stipulation adequately covered Dr. Juarez’s potential testimony.
It is undisputed that the defense proved that it exercised due diligence in subpoenaing Dr. Juarez and attempting to obtain his presence at trial. See La.C.Cr.P. art. 709(3). It was also undisputed that Dr. Juarez left the state without notice to the defense. Furthermore, the defense showed that he would be available to testify after February 6, 1991, one week Rafter the scheduled trial date. See La.C.Cr.P. art. 709(2). Dr. Juarez’s testimony was unequivocally material, directed to the pivotal issue of defendant’s sanity at the time of the offense. See La.C.Cr.P. art. 709(1). His testimony is even more significant in light of the State’s attack, on cross-examination, that the defendant’s medical experts were not in the best position to evaluate the defendant and that the error in mislabeling the reports of the defendant’s drug tests impugned Dr. Juarez’s credibility. Additionally, the absence of Dr. Juarez’s testimony reinforced the State’s position on rebuttal that the defendant was under the influence of drugs when the crime was committed. Therefore, the critical issue presented by this case is whether the trial court correctly determined that the stipulation as to Dr. Juarez’s testimony adequately protected the defendant’s right to present testimony and prevented specific prejudice to the defendant.
In State v. Rogers, 553 So.2d 453 (La.1989), the Louisiana Supreme Court found that the trial court had abused its discretion in denying the defendant’s motion for a continuance. As in the instant case, the defendant had made all the requisite showings with regard to due diligence and that the absent witness would be available to testify at a later date. Therefore, the court noted that the only real issue was whether the witness’s testimony was material and whether her presence was necessary. The court first defined material evidence as evidence tending to prove or disprove a matter at issue. Id. at 455. The *727 court then defined the standard for determining whether there is a necessity for the presence of the witness at trial as “simply another way of saying that ... the material ‘facts [to which the absent witness is expected to testify] can be proved by no witness in attendance upon the court’ as provided for by art. 709’s precursor, La.R.S. 15:322.” Id. at 455-56. The court then found that the absent witness’s testimony was material and that her presence was required because, although other witnesses could testify about some of the same facts, there were certain facts to which only the absent witness could testify. Further, the substance of the witness’s testimony directly substantiated the defendant’s contention that a confidential informant had set him up by hiding drugs in his home and then calling the police.
Contrariwise, in State v. Smith, 477 So.2d 875 (La.App. 4th Cir.1985), this Court considered whether the trial court abused its discretion in denying a motion for a continuance based on the absence of one of the psychiatrists who had served on a lunacy commission appointed to examine the defendant. The other member of the commission did | gtestify. The State stipulated that the absent witness would have testified to everything alleged in the motion for a continuance. This Court concluded that the absent doctor’s testimony would have been repetitive, was therefore unnecessary, and thus the trial court did not abuse its discretion by denying the motion for a continuance. Id. at 878.
In this case, Drs. Cox, Braden, and Super opined that the defendant was psychotic and did not know the difference between right and wrong. Thus, the stipulation that Dr. Juarez would also testify that the defendant was legally insane indicates that this is cumulative evidence.
However, the defendant argues that Dr. Juarez’s testimony would be unique in two important respects — the presence or absence of cocaine or alcohol in the defendant’s system following his arrest and the defendant’s medical-mental condition when he was brought to Orleans Parish Prison following his arrest. Apparently, the medical records from the prison reflected that the defendant tested positive for cocaine; however, Dr. Juarez maintained that this test was mislabeled and that it was not the defendant’s drug test. Although the State entered into a stipulation on this issue, it exploited the error in the test results while cross-examining the defendant’s medical experts, thereby attacking Dr. Juarez’s credibility indirectly. For example, while cross-examining Dr. Cox, the prosecutor asked Dr. Cox if he had been informed that the defendant tested positive for cocaine. On another occasion, when the prosecutor questioned Dr. Super about the defendant’s drug test, the trial court did not specifically rule on an objection, but did remind the jury that the stipulation regarding Dr. Juarez’s testimony would be that the tests performed under the name of Kenneth Corley were mislabeled, that the defendant did not test positive for cocaine, and that no tests for cocaine were taken. Thereafter, the prosecutor continued to cross-examine Dr. Super about the mislabeling until the court sustained the defendant’s objection.
In the tape recording of the phone conversation between Dr. Juarez and defense counsel, Dr. Juarez adamantly maintained that the error in labelling would have occurred at the lab or possibly the sheriff’s office, but that he knew it was an error and disregarded it. According to the tape, Dr. Juarez had personally delivered an earlier sample from the defendant and watched while it was la-belled; that test was negative. The stipulation prepared the day before defense counsel’s recorded conversation with Dr. Juarez states that “[s]ince his arrest July 10, 1989, no tests for cocaine were performed on Kenneth Corley Usince his arrest.” Therefore, the trial court erred in concluding that the stipulation adequately covered the substance of what Dr. Juarez said on the tape. Only Dr. Juarez could have presented the evidence that the defendant was tested for drugs following his arrest, that the sample was mislabeled, and that the test results were actually negative. The stipulation created confusion, a misleading inference, and was entered into only because of the denial of the continuance.
The second critical aspect of Dr. Juarez’s testimony that was not covered by the stipulation was the defendant’s mental condition on July 10, 1989. When the State cross- *728 examined the defendant’s medical experts, each witness admitted the person in the best position to establish the defendant’s mental status was Dr. Juarez, who examined the defendant shortly after he was brought to the psychiatric ward at Orleans Parish Prison. Each expert witness testified that, although they reviewed Dr. Juarez’s medical records and relied on them in forming their opinion, the defendant’s symptoms had changed from July 10, 1991, because of the anti-psychotic medications he was taking.
The tape indicates that Dr. Juarez would have testified in great detail as to the defendant’s condition when he was brought to Orleans Parish Prison. Specifically, Dr. Juarez could have elaborated on the defendant’s symptoms of active psychosis that formed the basis of his opinion and the opinions of the other defense experts. Because the State was able to attack Dr. Juarez’s credibility in a manner to which the defense could not respond, his observations as reflected in the prison medical records, and thus all of the expert testimony based on those records, was called into question. Had the requested continuance been granted and the trial delayed until Dr. Juarez could testify in person, the defense could have presented his observations of the defendant and his evidence regarding the defendant’s drug tests to counter the State’s credibility attack.
Dr. Juarez’s testimony became more crucial in light of Dr. Applebaum’s rebuttal testimony concerning the defendant’s past use of drugs and his opinion that the defendant’s July 10, 1989, psychotic episode was caused by drug abuse while on furlough. The defendant objected to this testimony on the grounds that there was a stipulation that the defendant was not on drugs at the time of the July 10, 1989, occurrence; however, the trial court overruled this objection.
Insanity is an affirmative defense on which the defendant bears the burden of proof. The record in this matter clearly demonstrates that the defendant was substantially prejudiced by the absence of Dr. Juarez’s testimony. The stipulated testimony of Dr. Juarez, the only alternative available to the defendant, was contradictory and created a misleading inference that the State exploited during both cross-examination and rebuttal. The defendant was unable to respond to these attacks, which unduly prejudiced his ability to present an adequate defense. The majority fails to appreciate this prejudice and as a result wrongly affirms the defendant’s conviction and sentence. I therefore respectfully dissent.