MARVIN, Chief Judge.
In this appeal of their felony convictions, the jointly charged and tried co-defendants, Kennedy and Middlebrook, complain of the trial court’s ruling that required them, without consultation, to simultaneously exercise, with each other and with the State, peremptory challenges of jurors.
Each appellant contends the trial court’s ruling effectively denied him the intelligent exercise of the 12 peremptory challenges guaranteed him by LSA-Const. Art. 1, § 17, as implemented by CCrP Art. 799.
We reverse the convictions and remand for a new trial without addressing the other assignments of error made by defendants.
FACTS
Kennedy and Middlebrook were charged in count one of a two-count bill with possession of cocaine found in an automobile. Count two of the bill charged them and a third co-defendant, Jacqueline Jamerson, with possession of cocaine found in an apartment belonging to Ms. Jamerson. Each defendant had separate counsel.
When trial commenced, the court instructed defense counsel as follows:
THE COURT: There are no jurors here. We need to take care of two items of business.
Number one, this Court has adopted a Simultaneous Challenge Rule, the lawyers are required to make their challenges simultaneously; and the Court believes for that to work, they are not to discuss the matter of challenges among themselves.
... there is not to be any consultation about who to challenge, before exercising the simultaneous challenges.
The Court would note that not only does it feel that simultaneous challenge would not be simultaneous if it were any other way, but also, the Court notes that in this particular case, all of the defendants have stated clearly to the jury that they are not identifying themselves with anybody else.
But the main reason is that the Simultaneous Rule would not be simultaneous if the Court allowed it to go any other way....
Number one, the Court has not told Counsel they cannot communicate, and they cannot confer. The Court has limited what Counsel can do about conferring in that Counsel cannot confer about juror *704 challenges. And that includes whether you like or don’t like a juror.
Your objections are noted, the Court’s ruling still stands ...
The District Attorney does not have an advantage because he has twelve challenges for each defendant, and each defendant has twelve challenges. And the Court does not believe that this gives the District Attorney any unfair advantage. What it does is it moves the trial along and requires each defendant to make his own selection....
Counsel for each defendant objected to the court’s instructions, complaining that the result could allow the State three times as many peremptory challenges as defendants collectively and would deny them a fair trial and a fair jury.
THE SELECTION PROCESS
Ms. Jamerson, more than eight months pregnant at trial, participated with the other defendants in the trial through the selection of the 12-person jury. Before the alternate juror was selected, Ms. Jamerson went into labor and gave birth to her child in an adjoining courtroom.
On the Monday following Ms. Jamerson’s giving birth on Friday, the court effectively dismissed Ms. Jamerson from the trial by granting a mistrial only as to her, denying a motion for mistrial made by both Kennedy and Middlebrook. The alternate juror was then selected.
When the 12-person jury was completed on Friday, the State had been charged with 15 peremptory challenges and each of the three defendants had been charged with 12 peremptory challenges. Five of the peremptory challenges charged to the three defendants were joint or simultaneous challenges by two of the three defendants, Middlebrook and Kennedy, the appellants, having simultaneously challenged four persons, and Middlebrook and Ms. Jamerson having simultaneously challenged one person.
Appellants, Kennedy and Middlebrook, thus jointly rejected four jurors and singularly rejected eight jurors each, a total of 20 persons rejected by the two appellants.
THE ISSUE
The issue should be stated as whether a local court rule, authorized by CCrP Art. 788 B, providing for the simultaneous exercise of juror challenges by the state and “defendant(s),” may be applied or interpreted in such a way that results in a less than intelligent exercise of the number of peremptory challenges guaranteed each defendant by Art. 799.
DISCUSSION
The right to exercise peremptory challenges is a right to reject and not to select jurors. State v. Campbell, 173 La. 831, 138 So. 853 (1931); State v. Thompson, 495 So.2d 328 (La.App. 4th Cir.1986). Cf. Annotation, Jury: Number of Peremptory Challenges Allowed in Criminal Case, Where There Are Two or More Defendants Tried Together, 21 ALR 3d 725 (1968).
The purpose in allowing rejection of jurors by peremptory challenges is to achieve an impartial jury, permitting both the state and the defense to challenge (except solely on the basis of race) without urging a reason, in order that each may avoid accepting jurors who are “suspected” of partiality. See State v. Oliphant, 220 La. 489, 56 So.2d 846 (1952); and Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled in part in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894), which discusses and approves simultaneous challenges between the prosecution and the defense in the light of that purpose.
Neither the Louisiana constitution, the legislative enactments, nor the trial court’s rule, which are hereafter quoted, specifically addresses the problem presented when two or more co-defendants are required to simultaneously exercise their peremptory challenges without consultation between them. Compare discussion of the several ways in which some of the other states and the federal authorities have provided for the exercise of chai- *705 lenges by co-defendants, either by statute or by court rule. See Annotation cited supra at 21 ALR 3d 725, and Annotation, Number of, and Manner of Exercising, Peremptory Challenges in Federal Criminal Trials Subsequent to Promulgation of Rule 2j(b) of Federal Rules of Criminal Procedure, 11 ALR Fed. 713 (1972).
The right to reject a number of jurors peremptorily includes the right to intelligently exercise challenges. Comment (b) to Art. 799 acknowledges the trial court’s discretion to limit voir dire, but explains that a trial court abuses its discretion when it limits voir dire to such an extent that the right of rejection by peremptory challenge cannot be exercised intelligently.
The Louisiana provisions and the court rule are quoted:
The accused shall have the right ... to challenge jurors peremptorily. The number of challenges shall be fixed by law.
LSA-Const. Art. 1, § 17, in part.
In trials of offenses punishable ... by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant.
CCrP Art. 799, in part. Our emphasis. If the court does not require tendering of jurors, it shall by local rule provide for a system of simultaneous exercise of challenges.
Art. 788 B, in part.
At the conclusion of the examination of prospective jurors ... those ... who have not been excused pursuant to a challenge for cause shall be tendered to the state and the defendant(s) for simultaneous exercise of peremptory challenge in writing in a manner to be determined by the court.
Criminal Rule 15, 1st J.D.C., in part.
Many state and federal courts have noted that the right to exercise peremptories is not a federal constitutional right except to the extent that a defendant may be deprived of a fair trial or a fair and impartial jury. See Stilson v. United States, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919), and state and federal cases quoted in annotations cited supra. The U.S. Supreme Court has summarized the holdings in the federal courts and the courts in other states:
We have long recognized that peremptory challenges are not of constitutional dimension. [Citations omitted.] They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.
Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988).
Notwithstanding that the right to exercise peremptories is not expressly articulated in the federal constitution, it has been called “one of the most important of the rights secured to the accused.” Pointer v. United States, supra, 14 S.Ct. at p. 414. The denial or impairment of the right is reversible error without a showing of prejudice. Swain v. Alabama, supra, 85 S.Ct. at p. 835.
Middlebrook’s and Kennedy’s individual right to 12 peremptory challenges is “of constitutional dimension” in Louisiana, because this right does not solely stem, impliedly, from the Fifth and Sixth Amendments to the federal constitution, but from the specific provision in the Louisiana constitution which guarantees peremptory challenges, the number of which shall be fixed by law. See quoted provisions above. Similar provisions were contained in the Louisiana constitution and statutes in effect before the present constitution. See citations in State v. Elmore, 179 La. 1057, 155 So. 896 (1934), and in State v. Sevin, 243 La. 1023, 150 So.2d 1 (1963).
In Sevin, supra, four co-defendants, one or more of whom were represented by separate counsel, jointly exercised peremptory challenges which were allocated to each of the four defendants. The charge against one defendant was nolle prossed after the four had been charged with a total of 36 peremptory challenges, or nine each. Thereafter, and when the remaining defendants sought to exercise the 37th peremp *706 tory challenge, the state objected, arguing that 36 challenges had already been used and that each of the three remaining defendants had “consumed” the 12 challenges guaranteed him.
The Sevin trial court agreed, but allowed two additional peremptories to one defendant who had retained separate counsel after trial and jury selection had begun.
The state’s argument that the three remaining defendants had “consumed the [36, or 12 each] peremptory challenges to which they were allotted,” was found “not acceptable” by the Louisiana supreme court. The court noted that the 36 challenges should have been allocated nine to each of the four defendants, or 27 total to the three remaining defendants. The court reasoned that the three defendants remaining after the nolle prosse “[a]t that time ... were jointly entitled to an additional nine, and separately entitled to three additional peremptory challenges [9 + 3 = 12 challenges X 3 defendants =36 peremptory challenges].” 150 So.2d at p. 3. Our brackets.
The court emphasized that the Louisiana constitution guaranteed the right of an accused to peremptory challenges and that any erroneous ruling depriving a defendant of a peremptory challenge is a substantial violation of his constitutional right to a fair trial and requires reversal of the conviction. The right was characterized as an “absolute right,” which cannot be denied unless voluntarily waived. Sevin, p. 3. The court concluded that the trial court’s ruling denied each of the three defendants “a substantial right, ... the full twelve peremptory challenges to which each was entitled.” Id,., p. 4. Our emphasis.
The Sevin court reiterated the holding in State v. Oliphant, supra, 56 So.2d at p. 852, which we paraphrase:
An erroneous ruling of a trial court which deprives an accused of one of his 12 peremptory challenges is a violation of substantial constitutional or statutory rights that requires the granting of a new trial.
See and compare State v. Monroe, 366 So.2d 1345 (La.1978).
After the present Louisiana constitution became effective and in an appeal of a conviction of co-defendants, the Louisiana supreme court said that each of the 12 peremptory challenges guaranteed to each of three co-defendants who were being jointly tried “must be allotted to a specific defendant ... if the record is to reflect whether a particular defendant exhausted his peremptory challenges ...” State v. Nix, 327 So.2d 301, 326 (La.1975). Our emphasis. Here the trial court’s ruling did not allot each challenge to one particular defendant, but allotted the four jointly exercised challenges to both defendant-appellants.
From the constitutional provision, the statutory implementation, and the cited cases, we conclude that a defendant or co-defendant need show nothing more than that he has been denied or deprived of the right to one or more of the peremptory challenges guaranteed him and that he is not required to further show injury or prejudice because of that deprivation or denial. LSA-Const. Art. 1, § 17 and CCrP Art. 799, quoted supra. Oliphant, Sevin, Nix, Monroe, cited supra.
EFFECT OF ART. 788 B
We must also consider the effect of CCrP Art. 788 B, added to that article by a 1983 amendment. By part B, local courts are authorized to provide for a system of simultaneous exercise of [peremptory] challenges by court rule. We shall construe Art. 799, which fixes the number of peremptory challenges guaranteed to the accused [singular] by the constitution, with Art. 788, which provides who shall exercise the Art. 799 challenges and when and how.
The Louisiana constitution and the statutes providing for peremptory challenges are not ambiguous. The constitution states that “[t]he accused ” [singular] shall have a right to peremptorily challenge jurors. Art. 799 states that each defendant [singular] shall have twelve peremptory challenges, and the state twelve for each defendant [singular]. Our emphasis and brackets.
*707 Art. 799 clearly contemplates equality between the state and the defendant or any number of co-defendants. See State v. Elmore, supra.
Art. 788, as amended, speaks only of the state and the defendant [singular] in part A of that article. As originally written, Art. 788, requiring the state to first accept or challenge a juror before tendering that juror to the defendant, was of “considerable value to a defendant.” Comment, Art. 788. The original provision was continued as part A of the article after part B was added in 1983.
Art. 788 does not speak of multiple or co-defendants or contemplate who shall exercise the challenges other than in the singular, the state and the defendant. An Art. 788 B simultaneous challenge local court rule, when applied between the state and one defendant does not enervate the equality expressed in Art. 799, but enhances equality because it allows a trial court to remove, by court rule, the “inequality” that remains under Art. 788 if the state is required to accept or reject a juror before that juror is tendered to the defendant as part A of the article provides.
Thus we discern that both Art. 799 and a local court rule adopted under the authority of Art. 788 mean to achieve a standard of impartiality and equality between the state and the defense. We cannot construe the articles, separately or together, to allow an advantage in the number of challenges either to the state or to one or more defendants.
The Louisiana constitution does not guarantee that a defendant or co-defendants shall have the same number of challenges that are granted the state. Some states grant more or less challenges to one side or the other. The federal rule allows “additional challenges” to be granted to either side by the trial court. See Annotations cited supra.
Before 1928, the legislature allowed the state only half as many peremptory challenges as the defendant. State v. Elmore, supra, 155 So. at p. 897. Since 1928 the challenges allowed the state and the defendant have been equal in number. Since that time the cases interpreting the law have effectively upheld the principle that co-defendants and the state should have an equal number of challenges. Sevin, Nix, cited supra.
A trial court in Louisiana may enact and apply a simultaneous challenge rule to co-defendants that is in accord with the principles expressed herein. A trial court’s interest in more expeditious selection of the jury, however, is far outweighed by legislative or public policy based on the constitutional guarantee.
CONCLUSION
. We must find the trial court’s interpretation and application of the simultaneous challenge court rule prohibiting the co-defendants from conferring with each other was contrary to the legislatively-declared policy or purpose of Arts. 788 and 799 and exceeded the court's discretion to regulate the intelligent exercise of peremptory challenges.
The issue should not be stated whether each defendant “exercised” 12 peremptory challenges, as the State argues. That statement is merely reiterating what the trial court’s interpretation and application of the simultaneous challenge court rule accomplished, that is, charging each defendant with having rejected 12 jurors each, when in fact only 20 persons, four simultaneously, and sixteen, or eight each, singularly, were rejected by the two defendant-appellants.[1]
*708 We find no fault with the wording of First Judicial District Court’s simultaneous challenge rule. The rule does not require or permit that separate counsel for co-defendants be prohibited from briefly conferring with each other in order to intelligently exercise his or her respective client’s peremptory challenges.
Neither do we suggest that a trial court is without discretion to limit prolonged discussion between separate counsel for co-defendants on any subject. We hold that a trial court's discretion to regulate jury selection must be exercised, however, in the light of the current constitutional and statutory purposes we have discerned and stated. Arts. 788, 799, Sevin, Nix, Oliphant and Monroe, cited supra.
DECREE
We reverse the convictions and remand the case to the trial court to allow appellants to be retried.
BROWN, J., dissents with reasons.

. The State’s argument smacks of the familiar puzzle in logic that is presented in the story of the three salesmen who share a $30 hotel room. Each pays the manager with a $10 bill. Noting his mistake about the price of the room, the manager later gives $5 to the bellhop, instructing him to make the partial refund and to tell the salesmen their room was only $25. The bellhop, who lacked mathematical skills, gave each salesman $1 and pocketed the other $2. The result was each salesman was charged and paid $9, or a total of $27. The bellhop kept $2, accounting for $29. What happened to the other $1?
With two defendants being charged with rejecting 12 jurors each, but four of whom were jointly or simultaneously challenged as the trial court ordered, the result was only 20 jurors *708 rejected by defendants. Paralogistically, we ask: "What happened to the other four jurors defendants were charged with rejecting?"