626 So.2d 515 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Marty RICE, Defendant-Appellant.
No. CR93-498.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
*517 Don M. Burkett, Many, for the State.
JoAnn Gines, Shreveport, for Marty Rice.
Before DOMENGEAUX, C.J., and LABORDE and COOKS, JJ.
LABORDE, Judge.
Defendant, Marty Rice, appeals his conviction on two counts of attempted first degree murder for violating LSA-R.S. 14:27 and LSA-R.S. 14:30. We affirm the conviction and sentence, finding the trial court committed no reversible error.

FACTS
On April 6, 1992, Donald Behan, along with his uncle, J.R. Bland, Sr., and cousin J.R. Bland, Jr., were driving through the streets of Many, Louisiana. As Behan's vehicle approached the Dew Drop Inn located on Louisiana Avenue in Many, Louisiana, the defendant, Marty Rice, hurled himself through the open window of Behan's car. The defendant succeeded in getting most of his body through the window and began grappling with Behan over the steering wheel. Behan then began moving the car forwards and backwards in an attempt to dislodge the defendant from the vehicle. While Behan was trying to shake the defendant loose, the defendant was stabbing Behan with a small knife.
Apparently, defendant had smoked marijuana with Behan earlier in the day at which time he purchased a $30.00 bag of what he believed to be marijuana but which turned out to be parsley. Angered by Behan's duplicity defendant, upon spotting Behan, jumped into the car through the window and *518 said "give me my $30" or it was going to be "me and him." Defendant stated Behan had a knife on the dashboard and Behan used it to cut the defendant's hand and in the process cut his own. Defendant admitted to cutting Behan with the knife. After being cut in several locations including the neck, elbow, arm and leg, Behan was able to escape from the car and ran off down the road. For a short time the defendant attempted to pursue the fleeing victim but changed his mind and returned to the car.
Bland, Jr. testified that upon his return the defendant told the passengers of the car "I will kill everything living in the car if you do not give me $30." The occupants of the car handed defendant $30.00. After defendant seemed to calm down, he asked if they needed help in getting the car out of the ditch. An unsuccessful attempt was made to get the car out of the ditch. Defendant then wandered off in the direction of the Dew Drop Inn.
Later in the evening defendant again became involved in an altercation at the Middle Creek Apartment complex. Apparently, defendant had meandered over to the complex to see his girlfriend, Linda Sweet, and his children. At approximately 12:10 a.m. Officers Scott and Palmer were patrolling the complex searching for the defendant in connection with the investigation of the earlier attempted murder of Donald Behan and spotted defendant at Oscar Maxie's apartment. Both officers approached the defendant and instructed him to step away from the door. Defendant cursed them and stepped back inside the doorway. As they stepped toward defendant they observed that he had a knife and had assumed an offensive stance. They instructed defendant to submit to arrest; however, defendant refused, maintained his offensive stance and continued to curse and threaten the officers with bodily harm.
At this point, Officer Palmer went to his patrol car and radioed for back-up assistance.
Officer Scott stated that while Palmer was at the car an unknown female came to the door and instructed Linda Sweet to come outside. As Ms. Sweet was exiting the apartment with her child in her arms, defendant pulled the baby from her hip. The officer instructed defendant to put the child down and drop the knife, but defendant refused and continued to curse the officers.
At this point Officer DeLaCerda arrived and approached defendant. Officer Scott informed DeLaCerda that defendant was armed with a knife; DeLaCerda instructed defendant to drop the knife and release the child. DeLaCerda testified that out of concern for the child's well being, he approached defendant and sprayed him in the face with chemical mace in an attempt to free the child and disarm the defendant. Defendant began rushing Officer DeLaCerda with the child in his arms and the knife in his hand. Officer DeLaCerda, who had already drawn his service weapon from his holster, backed up but lost his balance and began falling backwards.
Defendant continued to lunge towards Officer DeLaCerda until they were within a few feet from one another. At that point DeLaCerda fired several shots in self defense. Defendant ran past DeLaCerda and collapsed near the parking lot. It was discovered that the child had been injured, and that defendant had been shot twice in the stomach and on the wrist. Both were rushed to Sabine Medical Center. Defendant's knife was later recovered from the scene, located at the approximate location where defendant collapsed from the gunshot wounds he sustained.
In connection with his attacks on Behan and Officer DeLaCerda, defendant was convicted of two counts of attempted first degree murder, violations of R.S. 14:27 and 14:30, by ten out of the twelve member jury as to the offense on Behan, and eleven out of twelve as to the offense on Officer DeLaCerda. Defendant was sentenced to forty years at hard labor on each count with the Louisiana Department of Corrections, the sentences to run concurrently.

ERRORS PATENT
La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This *519 defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922, so prescription is not yet running. Apparently, the purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus, the district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir. 1993).

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error defendant argues that the trial court erred when it failed to sustain defendant's objection to the introduction of evidence of other crimes after the state had answered in discovery that it would not introduce such evidence.
Prior to trial defendant filed a Motion for Discovery. Paragraph (7) of this motion defendant asked the following:

7.
Defendant requests the Court to order the District Attorney to inform the defendant of the State's intent to offer evidence of the commission of any other crime admissible under the authority of R.S. 15:445 or R.S. 15:446;
In response to defendant's motion, the state replied "none."
La.R.S. 15:445 and 15:446 since repealed by Acts 1988, No. 515, § 8, eff. January 1, 1989, which enacted the Louisiana Code of Evidence, read:
"§ 445. Inference of intent; evidence of acts similar to that charged
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
"§ 446. Evidence where knowledge or intent is material and where offense is one of a system
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
For subject matter of the repealed sections, see, now, C.E. art. 404.
Today, these statutes have been incorporated into La.C.E. art 404, which deals with Prieur notice [State v. Prieur, 277 So.2d 126 (La.1973)]. (See Historical and Statutory Notes to art. 404). LSA-C.E. art 404(B)(1), in addition to the discovery motion, is applicable in the instant case. It provides:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The provision's substitution for the repealed statute has brought no material change in the law which would affect the outcome of this proceeding, as neither forbids introduction of prior crimes evidence to impeach witness credibility. When the state replied "none" in response to defendant's motion for discovery concerning prior offenses admissible under LSA-R.S. 15:445 and 15:446 the state was simply voicing its intention not to use evidence of other crimes, wrongs, or acts in order to demonstrate proof of motive, opportunity, intent, preparation, plan, *520 knowledge, identity, absence of mistake or accident under the rationale of art. 404(B)(1).[1]
It did not relinquish its procedural right to impeach defendant's credibility under LSA-C.E. 609.1.[2] The testimony reveals that the trial court did not err in allowing evidence as to defendant's other crimes. In the present case, on three separate occasions, the state asked defendant whether he had been convicted of a crime. Each time defendant replied in the negative. Thereafter, the state referred the defendant to his conviction on September 10, 1990, on charges of battery of a police officer and simple battery. The state's cross-examination on this issue was well within the confines of art. 609.1. Where a criminal defendant testifies on his own behalf, the prosecution may not only establish prior convictions of the defendant but may also cross-examine him about details of the prior convictions in order to show the true nature of the offenses. State v. Truitt, 500 So.2d 355 (La.1987). Defense counsel's discovery motion in which the prosecution advised whether it intended to introduce other crimes evidence was rationally interpreted by the state to request Prieur notice and not notice of use of other crimes for witness credibility purposes pursuant to La.C.E. art. 609.1.
Evidence of prior convictions which are used to impeach a defendant's testimony is an exception to the Prieur rules requiring the prosecution to give reasonable, particularized notice to the accused of any other crimes evidence it intends to offer. State v. Goza, 408 So.2d 1349 (La.1982). This assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS TWO AND FOUR
In assignment of error number two defendant alleges the trial court erred in permitting the voir dire examination of prospective jurors in the presence of jurors already selected, thereby exposing selected jurors to hearsay. Although defendant alleges in brief that the court allowed this over defense counsel's objection, the record does not substantiate this assertion. Likewise, in assignment of error number four, defendant asserts the trial court erred in permitting prospective jurors to be accepted or challenged in open court in the presence of jurors who had already been selected, but the record reflects no objection on the part of defense counsel.
Defendant's arguments are vague insofar as they do not state how defendant was aggrieved or any legal basis for relief. In any event, according to La.C.Cr.P. art. 841, an irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence. Therefore, these assignments of error are meritless.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant next argues the trial court erred in permitting the state to exercise peremptory challenges of jurors based solely upon the race of the jurors. A prosecutor ordinarily is entitled to exercise peremptory *521 challenges for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried. Peremptory challenges may be exercised for no reason at all, or for any reason, however capricious or whimsical, save to violate the Fourteenth Amendment. Edmonson v. Leesville Concrete Co., Inc., 860 F.2d 1308, rehearing granted, on rehearing 895 F.2d 218 (5th Cir.1988), certiorari granted, 498 U.S. 809, 111 S.Ct. 41, 112 L.Ed.2d 18 (1990), reversed on other grounds, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), on remand, 943 F.2d 551, rehearing denied. The Fourteenth Amendment's Equal Protection Clause forbids the prosecutor to challenge the potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to consider impartially the State's case against a black defendant. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Absent violation of the Fourteenth Amendment, denial or impairment of a party's right to exercise peremptory challenges is reversible error, even without a showing of prejudice. State v. Kennedy, 584 So.2d 702 (La.App. 2d Cir.1991), writ denied, 590 So.2d 589 (La. 1992).
The burden of proof in a Batson claim of discrimination by the state in selecting a jury was described by the supreme court as follows:
Under Batson the defendant, after timely objection, must demonstrate a prima facie case of purposeful discrimination.4 To do so, the defendant must establish that he is a member of a cognizable racial group, that the prosecutor has exercised his peremptory challenges to remove other members of that race from the jury, and that these facts, along with the other relevant circumstances, raise an inference that the prosecutor used his peremptory challenges to exclude the veniremen from the jury on account of their race. Id. [476 U.S.] at 96, 106 S.Ct. at 1722.
The trial judge must determine whether the defendant has established the requisite prima facie case. In making this determination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any questions or statements by the prosecutor during voir dire examination or in exercising his challenges which may support or refute an inference of purposeful discrimination. Id. at 96-97, 106 S.Ct. at 1722-1723.
. . . . .
Once the defendant makes a prima facie showing of purposeful discrimination, Batson shifts the burden to the prosecutor to come forward with a neutral explanation for challenging the black jurors. This explanation may be something less than justification of a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant because of their shared race. Neither may the prosecutor merely assert good faith or deny discriminatory motive. The neutral explanation must be one which is clear, reasonably specific, legitimate and related to the particular case at bar. Id. 476 U.S. at 97-98, 106 S.Ct. at 1723; Belcuore, Restricting Racially Motivated Peremptory Challenges, 24 Fed.B.J. 39 (Jan.1987).
After the prosecutor has presented reasons for his use of a peremptory challenge which on their face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge. Tompkins v. Texas, 774 S.W.2d 195, 202 (Tx.Crim. App.1987), affd. without opinion by an equally divided court, [490] U.S. [754], 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); Batson, 476 U.S. at 98, 106 S.Ct. at 1723.
State v. Collier, 553 So.2d 815 (La.1989).
La.C.Cr.P. art. 795(C) embraces Batson in providing as follows:
C. No peremptory challenge made by the state shall be based solely upon the race of the juror. Whenever it appears that the state is systematically excluding jurors on the basis of race, the defense may demand a disclosure of reasons for the challenge. Neither the demand nor the disclosure shall be made within the hearing of any juror or prospective juror. *522 Indeed, the language of art. 795(C), stating "[n]o peremptory challenge may be made by the state shall be based solely upon the race of the juror," appears to be broader than Batson insofar as it implies that even one racially biased peremptory challenge is a violation of the edict against racial discrimination in the selection of jurors.
From the outset, it should be noted that defendant's argument is insufficiently briefed. Moreover, it contains several misstatements of fact including defendant's allegation that the state objected for cause or peremptorily to every black juror. This allegation can be refuted by a reading of the portion of the record containing the voir dire, which clearly shows the prosecutor did not object to every black juror; in fact, several black persons were accepted and seated as jurors.
In the instant case defendant did not object to the state's use of peremptory challenges on the basis of race until the state excused a venireman, Ms. Shirley F. Glover, a black female who was questioned in anticipation of becoming an alternate juror after the twelve members of the jury already had been impaneled. Prior to the peremptory challenge of Ms. Glover, three black jurors had been accepted by the state. The state used only two peremptory challenges other than for Ms. Glover; one was used to excuse Irma Drew, a black female, the second was used to excuse Roger Rivers, a white male. This refutes any pattern of racial discrimination on the part of the state.
Moreover, the record reveals that the prosecutor had no intention of exercising its peremptory challenge on Ms. Glover until defense counsel began questioning her on matters relating to race (e.g. whether she would be partial to defendant because he was from the same background). The trial judge evaluated the defendant's questioning of the juror and the prosecution's subsequent peremptory challenge and explanation therefor and determined the prosecutor would not have challenged this juror except for the fact of the defense's questioning. A reviewing court should generally accord the trial court great discretion in its determination whether the prosecutor's exercise of peremptory challenges springs from purposeful discrimination, because the decision usually turns on credibility determinations. Collier, supra, at 822. The trial judge believed that the prosecutor's motives were not racially discriminatory, but merely a response to the defense's actions, and we find no legal basis here for rewarding the ambush staged by counsel for the defense.
We find no abuse of discretion in the trial court's actions under Batson or LSA-C.Cr.P. 795(C). The trial judge had the opportunity to weigh the sufficiency of the prosecutor's reasons for exercising such challenge and was in the best position to determine whether the prosecutor was systematically excluding black jurors through use of his peremptory challenges. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
In this assignment defendant alleges the trial court erred in permitting the state prosecutor to make highly prejudicial comments concerning a civil suit filed in federal court against the City of Many and six police officers for damages resulting from alleged misconduct of officers on the Many Police Department. Defendant made no attempt in his brief to set forth any argument concerning this assignment of error. Therefore, in accordance with Uniform Rules of Courts of Appeal 2-12.4 this argument is considered abandoned.

ASSIGNMENTS OF ERROR NUMBERS SIX AND SEVEN
By these assignments of error defendant argues the evidence presented by the state was insufficient to convict the defendant of the attempted first degree murder of Ted DeLaCerda and Donald Behan.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 *523 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
Nonetheless, in order for the state to obtain a conviction, it must prove each of the elements of the crime beyond a reasonable doubt. In the instant case defendant was convicted of two counts of attempted first degree murder. La.R.S. 14:27 is applicable and provides:
§ 27. Attempt
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Furthermore, the relevant portion of La.R.S. 14:30 defines first degree murder as follows:
§ 30. First degree murder
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, first degree robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
Notwithstanding the preceding language, in order to find defendant guilty of attempted first degree murder, the defendant is required to have had specific intent to kill in addition to a minimum of one of the statutorily enumerated aggravating circumstances.
The specific intent to kill but not the specific intent to inflict great bodily harm is an essential element of the crime of attempted first or attempted second degree murder. Accordingly, the burden of proof for the crime of attempted first or attempted second degree murder is much more onerous than that for the crime of first or second degree murder. In proving first or second degree murder, either the specific intent to kill or the specific intent to inflict great bodily harm can be proven. However, in proving attempted first or attempted second degree murder, only a specific intent to kill will suffice.
For example, should the defendant use a deadly weapon to inflict great bodily harm, he could be found guilty of first or second degree murder if the victim dies, but not guilty of attempted first or attempted second degree murder if the victim lives. Thus, a jury instruction for attempted first or attempted second degree murder that a defendant could have the intent either to kill or to inflict great bodily harm would be improper.
State v. Brooks, 499 So.2d 741, 744-45 (La. App. 3 Cir.1986), appeal after remand, 520 So.2d 931 (La.App. 3 Cir.1987).
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
LSA-R.S. 14:10(1). See State v. Messiah, 538 So.2d 175 (La.1988), certiorari denied, 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990); State v. Pittman, 604 So.2d 172 (La. App. 4 Cir.1992). A legal conclusion to be resolved by the finder of fact, specific intent may be inferred from the circumstances. State v. Govan, 593 So.2d 833 (La.App. 4 Cir.), writ denied, 600 So.2d 654 (La.1992).
*524 In evaluating circumstantial evidence, La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Incorporating this rule under the Jackson standard, an appellate court must determine that viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3 Cir.1983), writ denied, 443 So.2d 585 (La. 1983); State v. Morris, 414 So.2d 320 (La. 1982). Here defendant was found guilty of two counts of attempted first degree murder.
As to the first charge against him, defendant was charged with the attempted murder of Donald Behan, whom defendant is alleged to have attempted to kill while engaged in the perpetration or attempted perpetration of an armed robbery. Our examination of the law and evidence leads us to conclude that sufficient evidence was presented to prove defendant guilty of the attempted first degree murder of Donald Behan. The record reveals no question but that the attempted murder was committed concurrently with the commission of an armed robbery. Here, there is "no doubt that the armed robbery was an immediate concomitant of the murder and formed, in conjunction with it, one continuous transaction." State v. Williams, 383 So.2d 369, 372, stayed execution, 387 So.2d 598 (La.1980), certiorari denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981); rehearing denied, 450 U.S. 971, 101 S.Ct. 1493, 67 L.Ed.2d 622 (1981); State v. Sullivan, 596 So.2d 177 (La.1992). The eyewitnesses to the crime, J.R. Bland, Jr., and Behan himself clearly indicated that defendant, armed with a knife, attempted to rob the vehicle's occupants of thirty dollars, before, during, and immediately after his brutal assault on Behan.
Our next question for review is whether the State showed beyond a reasonable doubt that defendant actually intended to kill Behan.
In order for an accused to be guilty of attempted murder, a specific intent to kill must be proven beyond a reasonable doubt. Although a specific intent to inflict great bodily harm may support a conviction of murder, the specific intent to inflict great bodily harm will not support a conviction of attempted murder. If it were unnecessary to prove specific intent to kill to establish attempted murder, the distinction between aggravated battery and attempted murder would in many cases lose its meaning, and in many cases an aggravated battery would become the more serious offense of attempted murder. State v. Butler, 322 So.2d 189 (La.1975).
Furthermore, as noted in Butler, under LSA-R.S. 14:27 an attempt to commit a crime involves a specific intent to commit a crime. The crime of murder is "the killing of a human being" under certain prescribed circumstances (using the analysis and emphasis as found in Butler). Thus, a person having the specific intent to inflict great bodily harm may lack the intent to commit murder, as he does not necessarily have the intent to kill another human being.
State In Interest of Hickerson, 411 So.2d 585 (La.App. 1 Cir.1982).[3]
Our application of the more stringent substantial standards articulated in Butler, Brooks, and Hickerson under the Jackson standard leads us to conclude that the lower court did not err. In a comparable case, State v. Edgar, 570 So.2d 88 (La.App. 4 Cir.1990), vacated on other grounds, 573 So.2d 1128 (La.1991), the court found the defendant guilty of attempted first degree murder and aggravated rape. Edgar is factually similar to the instant case, as defendant was convicted of attempted first degree murder for inflicting a seven centimeter laceration along victim's neck during one of the *525 enumerated crimes of LSA-R.S. 14:30, aggravated rape.
According to the testimony of Dr. Corley, Behan had several lacerations about the head, neck, elbow and leg. Behan's lacerations included a 2.3 centimeter scalp laceration, a 7 centimeter laceration behind the left ear, a 2.8 centimeter laceration in back of the neck, another posterior neck laceration of 10.5 centimeters, a 10 centimeter lateral neck laceration, an 8 centimeter gaping wide laceration on the left elbow, and a gaping wide laceration of 13 centimeters on the left lower leg. Dr. Corley testified that the laceration to the neck area went across the carotid arteries and vessels and would have been fatal had they gone any deeper. In light of this testimony, we conclude that sufficient evidence was presented to show defendant had the requisite specific intent to be found guilty of attempted first degree murder.
We find no merit in defendant's contention that he only stabbed Behan repeatedly to defend himself. First, the defense of self-defense is unavailable to those who are in the act of committing a crime. LSA-R.S. 14:21 provides:
§ 21. Aggressor cannot claim self defense
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Second, defendant's testimony is not only incredible in light of the opposing testimony on the subject, but in light of the repeated stabs inflicted upon Behan. In order for a homicide to be justified in self-defense, the person making the claim of self-defense must have reasonably believed that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save himself from that danger. State v. Lee, 498 So.2d 1177 (La.App. 3 Cir. 1986), writ denied, 504 So.2d 874 (La.1987).
The record reveals sufficient evidence for the jury to disbelieve defendant's version of the facts and to find defendant guilty of the attempted first degree murder of Donald Behan. Where conflicting testimony exists, credibility determinations go to the weight of the evidence, not to its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.1987), writ denied, 507 So.2d 226 (La.1987). Under the Jackson standard of review, viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented by the state of defendant's attempt to kill Donald Behan while in the perpetration or attempted perpetration of an armed robbery.
Likewise, the state presented sufficient evidence of the second count of attempted murder.
Clearly Officer DeLaCerda was engaged in the performance of his lawful duties at the time, a requisite of murder in the first degree. Therefore, the remaining question is whether the state presented sufficient evidence that defendant had specific intent to kill Officer DeLaCerda.
During trial, Officer Scott testified that he thought defendant had a small paring knife in his right hand and that when he asked defendant whether he had a knife, defendant replied "yes." Defendant tore baby Cornelius from his mother's arms in order to prevent the officers from arresting him. Officer Palmer testified that when DeLaCerda sprayed defendant with mace, defendant turned as if to go into the building but, realizing the door was closed, turned again toward DeLaCerda. DeLaCerda sprayed him with mace again. With the baby clutched in one arm, defendant then rushed DeLaCerda with the knife extended by his other. DeLaCerda then discharged his firearm, hitting the defendant and his child. Defendant ran several yards and dropped in the parking lot nearby. The knife, found next to his shoulder, was recovered by Officer Clyde Callens and placed in an evidence bag to be identified at trial.
Defendant argues this direct evidence does not indicate he had a knife or any other *526 weapon on his person so as to infer any specific intent on his part to kill or inflict great bodily harm on DeLaCerda. In brief, defendant even suggests that the knife may have been placed there by someone else because only police officers testified that they saw the knife after the defendant was subdued by the bullet wounds.
Although defendant tries to infer foul play on the part of the police officers, no evidence exists to support this allegation. Earlier in the evening defendant was in possession of a small knife which was used in the stabbing of Donald Behan. Thereafter, upon being discovered at the apartment complex, defendant was asked by officers whether he was in possession of a knife, to which he responded "yes." Moreover, several officers testified that the defendant charged Officer DeLaCerda with his finger out as if he was covering up a small knife.
As to both counts, the evidence presented by the state, both direct and circumstantial, was sufficient under the Jackson standard of review. Sufficient evidence was presented for the trier of fact to conclude beyond a reasonable doubt that defendant attempted to kill a civilian while committing an armed robbery, and an officer engaged in the performance of his lawful duties. Every reasonable hypothesis of innocence on the part of the defendant had been excluded. These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
In this assignment, defendant argues the trial court erred in its instruction to the jury. In brief, counsel for defendant quotes La. C.Cr.P. art. 802:
Art. 802. General charge; scope
The court shall charge the jury:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence. Defense counsel further quotes La.R.S. 15:271, which provides:
§ 271. Plea of not guilty; burden of proof
The plea of not guilty throws upon the state the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute the defendant's guilt.
Defendant argues the portion of the trial court's charge to the jury which states "It is sufficient that the State prove the guilt of the accused to your satisfaction and beyond a reasonable doubt" deviated from the statutory jury charge and prejudiced the defendant.
La.C.Cr.P. art. 804 specifically covers "reasonable doubt" and provides:
Art. 804. Same; charge as to presumption of innocence, reasonable doubt, and several grades of offense
A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
. . . . .
The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
The added language "to your satisfaction" placed a more onerous burden upon the state. Furthermore, defendant does not in any way allege in brief how any of his rights were affected. This jury instruction as given was not prejudicial to the defendant. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER NINE
In this assignment, defendant alleges that the trial court erred in instructing the jury that a conviction was proper if "you honestly believe that the state has proved the accused to be guilty beyond a reasonable doubt." Defendant claims the trial judge erred in failing to instruct the jury that it is the *527 burden of the state to prove beyond a reasonable doubt each element of the crime to constitute the defendant's guilt.
Defendant's argument is clearly refuted by a review of the record. The court stated in its charge to the jury: "On the contrary, every person accused of any crime is presumed by law to be innocent until each element of the crime necessary to constitute his guilt shall have been established beyond a reasonable doubt." The trial court further set forth the specific elements needed to convict the defendant of the attempted first degree murders of Donald Behan and Officer DeLaCerda. The jury instruction reveals the trial court instructed the jury as mandated by La.C.Cr.P. art 802 and 804. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN
In his final assignment of error, defendant contends the trial court erred in imposing an excessive sentence of forty years at hard labor on each count, to run concurrently. Defendant argues that as a first time felony offender he was eligible for probation, and that the factual considerations articulated by the trial judge were insufficient and not found in the record.
The jurisprudence clearly indicates that to constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
In State v. Sepulvado, 367 So.2d 762 (La. 1979), the Supreme Court determined that Art. 1, § 20 of the Louisiana Constitution of 1974 authorized appellate review of individual sentences for excessiveness. It found that the statutory criteria set forth in old La. C.Cr.P. art. 894.1 (1977) provided the appropriate criteria to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives.
This court will use the new sentencing guidelines to determine whether defendant's sentence is constitutionally excessive. To use the sentencing guidelines as an aid, the appropriate grid cell must be determined to arrive at the designated sentencing range. The grid cell is established by the seriousness level of the offense and the criminal history index of the offender.
Defendant was convicted of two counts of attempted first degree murder in violation of La.R.S. 14:30 and 14:27. Defendant was sentenced to forty years at hard labor on each count, both sentences to run concurrently. Defendant's Sentencing Guidelines Report places defendant in Grid Cell "1-F," which grid cell has a designated sentencing range of seventy-two months to one hundred and two months (6 to 8½ years). Defendant's grid cell was calculated correctly. Defendant's grid cell falls within the Incarceration Sanction Zone, which zone suggests that the court should impose a sentence consisting exclusively of incarceration. La.S.G. § 207(B)(1). Thus, the trial court was correct in imposing a sentence of imprisonment in lieu of probation.
Upon sentencing, the trial judge stated that she believed the recommended sentencing guidelines were not appropriate in this case. The judge filed her written reasons for departing from the sentencing guidelines into the record, detailing the aggravating factors in defendant's case. Such aggravating factors included: defendant knowingly created a risk of death or great bodily harm to more than one person, caused significant injuries to victim Behan, consumed a controlled dangerous substance prior to the crime, and had a history of resisting arrest and violent behavior towards police officers.
The trial judge adequately complied with La.C.Cr.P. art. 894.1 in articulating her reasons *528 for imposing sentence. Furthermore, in departing from the designated sentencing range, the trial judge sufficiently set forth both aggravating and mitigating circumstances in compliance with La.S.G. § 209. It should be noted that under La.R.S. 14:30 and 14:27, the defendant faced a statutory maximum possible sentence of fifty years on each count.
For the foregoing reasons, defendant's sentences do not appear to be excessive; therefore, this assignment of error lacks merit.

CONCLUSION
This court finds no merit in any of defendant's enumerated assignments of error. Thus, defendant's conviction and sentence are affirmed with instructions to the trial court to notify the defendant of the three year prescriptive period set forth in La. C.Cr.P. art. 930.8.
AFFIRMED.
DOMENGEAUX, C.J., concurs in the result.
NOTES
[1] Had defendant asked the state to make known its intention to question defendant pursuant to LSA-C.Cr.P. 720, the outcome would be no different, as that provision permits such discovery as to other crimes evidence permissible under LSA-C.E. 404. As stated above, this provision's enactment has resulted in no change that would affect the outcome of this case.
[2] LSA-C.E. art 609.1 reads as follows:

A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
[3] Although Hickerson and Butler, supra, concerned second degree murder allegations, there is no basis for distinction here, as the only difference between an attempted first or second degree murder is the presence of any of those aggravating circumstances contained in LSA-R.S. 14:30.